UNITED STATES of America, Plaintiff–Appellee,

v.

John Lewis WAGNER, Michael T. Wagner, and Scott A. Sine, Defendants–Appellants.

Nos. 90–2737, 90–2738 and 90–2739.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1993.

Decided June 17, 1993.

Frederick J. Hess, U.S. Atty., Ralph M. Friederich, Asst. U.S. Atty. (argued), Crim. Div., Fairview Heights, IL, for U.S.

William J. Rapp, Cincinnati, OH (argued), for John L. Wagner.

Lynn A. Hirschfeld, Chicago, IL (argued), for Michael T. Wagner.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL, for Scott A. Sine.

Before CUDAHY and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this direct criminal appeal, John Lewis Wagner ("John"), Michael T. Wagner ("Michael") and Scott A. Sine ("Sine") challenge the validity of their guilty pleas and sentences for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. We have jurisdiction to decide this appeal pursuant to 28 U.S.C. §§ 1291, 1294 and 18 U.S.C. § 3742. We affirm the validity of the guilty pleas and John and Michael's sentences. However, we vacate Sine's sentence and remand for a specific finding on how much cocaine should be attributed to him. Furthermore, we dismiss without prejudice the ineffective assistance of counsel claims.

### I.

#### A. The Conspiracy.

Before he had completed serving his most recent term of imprisonment, John Wagner was making big plans for his future. He confided to cellmate Peter Brown that he intended to become the top drug dealer in southern Illinois. Upon his release from the Menard Correctional Center in January 1987, John began to implement his plan. After contacting a childhood friend, Robert Griebe, John got cocaine from his brother Michael Wagner, who lived near Chicago. With Griebe's aid, John brought cocaine to southern Illinois where he "fronted" it to others to sell for him. When Brown was released from prison, he became involved in the conspiracy, using cocaine and becoming heavily indebted to John.

The John Wagner organization continued, following the same pattern. People would become involved for six months at a time, get heavily into debt and then move on. Sine entered the conspiracy sometime around March, 1988. He obtained cocaine from John and sold it to others in smaller amounts. Sine also went along on at least one trip to Michael's to obtain cocaine. In December 1988, Michael moved to Arkansas. Before he moved, Michael found another supplier in the Chicago area to furnish John with cocaine.

#### B. The Indictment and Plea.

As a result of a DEA investigation, John, Michael, Steve Wagner (brother to John and Michael), Scott Sine, Ricky Alsip, Michael Hanley, Charles Walsh and Robert Griebe were all charged by indictment with conspiracy to distribute in excess of five kilograms of cocaine. Alsip, Walsh and John were also charged with various counts of distributing

cocaine. John, Michael, Hanley and Sine all changed their pleas to guilty on the conspiracy charge at a change of plea hearing.

According to the informal agreement reached between the defendants and the government, no additional cocaine or marijuana charges arising from these facts would be brought against the defendants. Also, the one distribution count pending against John would be dismissed. Their pleas did not specify the amount of cocaine involved in the conspiracy. The indictment charged the defendants with conspiring to distribute in excess of five kilograms of cocaine. However, pursuant their agreement with the government, each defendant pled guilty only to the conspiracy and not to a specific amount of cocaine. At the sentencing hearing each defendant would therefore have an opportunity to present evidence and argue how much cocaine actually should have been attributed to him. The parties agreed that the district court would then make a finding on the amount of cocaine and sentence each defendant on the basis of that finding.

At the change of plea hearing the district court asked all the defendants their age and educational backgrounds. The district court then asked the defendants individually about whether they could read, write and understand English; whether they had any problem understanding him; whether they were under the care of a doctor or psychiatrist for any disease, mental disability or ailment; whether they were taking any medication; and whether now or in the past they had been addicted to any type of narcotics.[1]

The district court then informed the defendants of the consequences of entering a guilty plea. Specifically, the court advised them that the offense falls under the Sentencing Guidelines and that any sentence would depend on the amount of drugs attributed to the defendant which he could not compute until the sentencing hearing. (Pl.

Tr. 13).[2] The court expressly noted that the punishment could range up to life imprisonment, and a fine up to $4,000,000 could be assessed. The court also stated that if a defendant were sentenced to a term of imprisonment, the term would be followed by a period of five years' supervised release. Finally, the district court informed the defendants that:

> [O]n a charge involving at least five kilograms, there would be a minimum sentence of ten years. If it is less than five kilograms, and your involvement being in the conspiracy with less than five kilograms but more than 500 grams, then the sentence would be a minimum of five years. So, you know, I mean to put it in every day vernacular, we're talking about some substantial time of imprisonment here of all of you. I wanted to advise you of that.

(Pl. Tr. 13).

The court asked each defendant whether he understood that he did not have to plead guilty and that he was entitled to a jury trial, where he could confront witnesses against him and request witnesses on his own behalf. Later, the district court informed the defendants that they had a right to remain silent "during the course of this." (Pl. Tr. 17). However, the district court did not explicitly mention Fifth Amendment rights in the context of a jury trial.

*C. Sentencing Hearing.*

At the sentencing hearing, Brown testified that he made four or five trips north to pick up cocaine. Griebe testified that he made seven or eight trips to Chicago and obtained one kilogram of cocaine on each trip. He also recalled that Sine accompanied him on one of these trips and that Michael had made three or four trips from Chicago, delivering one kilogram of cocaine per trip. (Sen. Tr. 89). Alsip testified that he received a total of

---

1. Michael Wagner contends that he was not asked these questions. The original transcript indicated that John Wagner answered these questions twice. However, the district court ordered that the record be amended to substitute a corrected transcript. The corrected version indicates that Michael Wagner answered the questions.

2. References to the transcript of the change of plea hearing are designated "Pl. Tr. __." References to the sentencing hearing transcript are designated "Sen. Tr. __."

4 kilograms of cocaine from John. Walsh testified that he had seen Michael deliver 5 kilograms to John in a red toolbox.

DEA Special Agent John Yacup gave the most extensive testimony at the sentencing hearing. Based on interviews and proffers with co-conspirators and informants, Yacup testified regarding his calculations of the amount of cocaine. Yacup testified that Michael had made 25 to 50 trips to Southern Illinois to deliver cocaine. The amounts of cocaine delivered on these trips ranged from pounds, half pounds to kilogram quantities. He also testified that Mike Hanley had sold between two and three kilograms. (Sen. Tr. 249). John's ex-wife told Yacup that she recalled counting money in amounts of $100,000 on three different occasions. Yacup also testified that Steve recalled stashing $500,000. (Sen. Tr. 252–53). Finally, Yacup testified that John made approximately 50 trips north for cocaine. (Sen. Tr. 285). Yacup cut short proffers[3] from John and Michael because he did not think they were providing complete and truthful information.

Based on the 8 kilograms Griebe reported, the 20–50 deliveries by Michael, the 5 kilograms Walsh testified Michael had in the toolbox, the 2 kilograms by Hanley and the 2 kilograms by Brown, the district court determined that the amount of cocaine involved in the conspiracy was greater than 15 kilograms. The district court denied John's and Michael's requests for a two-level reduction for acceptance of responsibility pursuant to United States Sentencing Guideline § 3E1.1. The district court also enhanced John's base level offense by four pursuant to Sentencing Guideline § 3B1.1 for being an organizer or leader in the conspiracy. The district court granted Sine's request for a two-level decrease for acceptance of responsibility. The district court did not ask each defendant if he had an opportunity to read the Presentence Investigation Report (PSI). However, all three defendants, through counsel, filed objections to their PSIs. (R. 197, 201, 204).

John Wagner's sentencing range was 292 to 365 months, and the district court sentenced him to 292 months because it found that this was adequate punishment for John's involvement. Michael's range was 188 to 235 months. The district court sentenced him to 210 months because he was the principal supplier of the cocaine, although he was not the head of the conspiracy. Sine's range was 121 to 151 months' imprisonment. The district court sentenced Sine to 151 months' imprisonment because although it had given Sine a two-level reduction for acceptance of responsibility, the court stated that it had doubts as to whether Sine had really accepted responsibility. The district court noted that 151 months was the low end of the range had the reduction not been granted.

On appeal, we address six issues raised by defendants. All three defendants challenge the validity of their guilty pleas and argue that the pleas should be set aside for the district court's failure to comply with Federal Rule of Criminal Procedure 11. They also dispute the district court's finding that the conspiracy involved 15 to 50 kilograms of cocaine. All three challenge their sentences on the basis that the district court either erroneously adjusted or refused to adjust their base offense level. They also argue that because the district court did not strictly comply with Rule 32, their sentences must be vacated and remanded. John argues that he was denied his right to confront witnesses by Yacup's testimony. Finally, Michael and John allege that they received ineffective assistance of counsel at the trial level and that this is an independent basis for finding that their guilty pleas are invalid.

## II.

### A. *Voluntariness of the Guilty Pleas.*

All three defendants claim that their guilty pleas should be set aside because the district court's application of procedures varied from those set forth in Federal Rule of Criminal Procedure 11. They contend that the district court did not properly advise them of the

---

**3.** Our understanding from the testimony of Agent Yacup is that in this case, the term "proffer" refers to an interview where a defendant is assured that any information given to the government agent will not be admitted against him during the trial or sentencing hearing. (Sen. Tr. 286).

possible sentence for the charge to which they pled guilty. Fed.R.Crim.P. 11(c)(1). They also contend that the district court did not properly advise them of their right against self-incrimination if they chose to plead not guilty. Fed.R.Crim.P. 11(c)(3).

■ Any variance from the procedures required by Rule 11 that does not affect substantial rights shall be considered harmless error. Fed.R.Crim.P. 11(h); *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). "[I]n a case alleging a district court's failure to advise a defendant of one or more rights, 'the test on appeal is whether looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights.'" *United States v. Ray*, 828 F.2d 399, 414 (7th Cir.1987), *cert. denied, McChristion v. United States*, 484 U.S. 1045, 108 S.Ct. 781, 98 L.Ed.2d 867 (1988), (quoting *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983)).

■ The district court is required by Rule 11(c)(1) to explain the nature of the charge, the mandatory minimum and maximum penalty, including special parole or supervised release. Also, the district court is required to inform defendants of any applicable sentencing guidelines. At the change of plea hearing, the district court cautioned that the sentencing consequences could include life imprisonment, a fine up to $4 million and at least 5 years supervised release. The district court further explained that if it were determined that less than 5 kilograms but more than 500 grams were involved, there would be a minimum sentence of 5 years imprisonment; if it were determined that at least 5 kilograms were involved, the minimum term of imprisonment would be 10 years. The district court also told each defendant that "[t]he exact category you would fit into under the guidelines is not possible for the Court to predict at this time, although it could range again, as the Court has said, up to life imprisonment. Now any of you have any questions about this?" (Pl. Tr. 13). The defendants argue that this recitation was too vague to permit them to make knowing, intelligent and voluntary pleas. They cite to a Fifth Circuit case where the district court's failure to warn the defendant of supervised release was held to warrant a reversal on Rule 11 grounds. *United States v. Bachynsky*, 924 F.2d 561, 566 (5th Cir.1991). We note, however, that this case was reversed on rehearing. *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991).

We find no error here. As the Supreme Court recognized in *McCarthy v. United States*, 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 1171–72 n. 20, 22 L.Ed.2d 418 (1969), "[m]atters of reality, and not mere ritual, should be controlling." At the time of the change of plea hearing, the district court had not yet determined the amount of cocaine involved in the conspiracy. Therefore, it could not compute with specificity the exact range of sentencing possibilities. The district court's disclosure sufficiently informed the defendants of their rights for them to make an intelligent, knowing and voluntary plea.

Defendants also allege that the district court violated Rule 11(c)(3) because it did not explain that the defendants could not be compelled to incriminate themselves. Pursuant to Rule 11(c)(3) the court advised the defendants that they did not have to plead guilty; that they were entitled to a trial by jury where they could call, confront and cross-examine witnesses; that they could be represented by counsel at trial; and that they would not be convicted unless proved guilty beyond a reasonable doubt. The court continued:

> All right. Now the Court may ask you during the course of this certain questions about this offense. And if I do, you need to understand that you have Fifth Amendment rights, rights against self-incrimination, a right not to be compelled by the Court or anybody else to be a witness against yourself. To put it another way, you have a right to remain silent with regard to any questions that may be asked of you, including any that the Court may ask of you.

The defendants argue that this phrasing did not convey to them that the privilege against self-incrimination would apply if the defendants chose to go to trial and consequently

there could not be a knowing, voluntary and intelligent waiver of that right.

■ Rule 11 is designed to protect a defendant's right to make a knowing and voluntary plea. The Rule helps prevent frivolous post-conviction attacks and helps the district court know whether the plea is truly voluntary. *United States v. Ray*, 828 F.2d 399, 404 (7th Cir.1987). We should not give Rule 11 "such a crabbed interpretation that ceremony [is] exalted over substance." Fed. R.Crim.P. 11(h) Advisory Committee Note 1983).

■ Rule 11(c)(3) and (4) codified the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which held that a defendant must be apprised of the fact that he relinquishes certain constitutional rights by pleading guilty. The advisory committee's notes to this subsection state, "The rule takes the position that the defendant's right not to incriminate himself is best explained in terms of his right to plead not guilty and to persist in that plea if it has already been made." Fed.R.Crim.P. 11, Advisory Committee Notes (1974); *United States v. Ray*, 828 F.2d at 414. A failure to advise the defendant of the rights specified by *Boykin* does not necessarily invalidate the plea. *United States v. Henry*, 933 F.2d 553, 559 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992).

■ Therefore, our review is based on whether under the totality of the circumstances the pleas were voluntary and intelligent. *Id.* at 560. "[W]hen a court advises the defendant that by pleading guilty he is waiving his rights to trial by jury and to confront the witnesses against him, 'a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination' is unnecessary." *Id.* (quoting *United States v. Dorszynski*, 484 F.2d 849, 851 (7th Cir.1973), *rev'd on other grounds*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747 (1976)). Here, the district court informed the defendants of their rights to a jury trial and their right to plead not guilty. Each defendant stated on the record that he understood that

he was waiving these rights. Therefore, under the totality of the circumstances, the pleas were both voluntary and intelligent, particularly in light of the fact that the defendants were informed specifically of their Fifth Amendment rights in the context of the change of plea hearing.

*B. Amount of Cocaine.*

■ All three defendants argue that the district court erred in finding that more than 15 kilograms of cocaine were involved in the conspiracy. The sentencing court's factual determination is entitled to deference unless it is clearly erroneous. *United States v. Rossy*, 953 F.2d 321, 325 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 1240, 117 L.Ed.2d 473 (1992). Because the quantities of drugs are so important to sentencing in a narcotics case, the court must make an explicit finding as to the calculation of drug quantity and offense level and how it arrived at the sentence. *United States v. Leichtnam*, 948 F.2d 370 (7th Cir.1991).

■ "[A] defendant who pleads guilty to a conspiracy charge is held accountable, for purposes of determining his relevant conduct and the applicable guideline range, for all drug transactions that he was aware of or that he should have reasonably foreseen." *United States v. Guerrero*, 894 F.2d 261, 266 (7th Cir.1990). Therefore, once the district court determines the total amount of drugs involved in a conspiracy, it must find how much of that total is attributable to each defendant.

■ The district court made specific findings regarding the total amount of drugs involved in the conspiracy. Relying on the 8 kilograms Griebe transported; the 2 kilograms attributed to Mike Hanley; 2 kilograms attributable to Brown; the five kilograms Walsh testified Michael had delivered; the 20–50 deliveries by Michael; and the 50 or so trips arranged by John, the court established that more than 15 kilograms were involved. Our independent review of the record fully supports this finding. The district court did not rely on testimony that was repetitive or unreliable. Therefore, the finding is not clearly erroneous.

■ We must now consider whether the district court erred in its conclusion that this amount was reasonably foreseeable to each defendant. This is also a factual determination, and we will reverse only if clearly erroneous. The district court found that John was the organization's leader. The trips to Chicago were done at his direction, and the district court specifically stated that John "was the primary driving force behind this criminal organization from all of the activities that the various witnesses have testified to." (Sen. Tr. 346). He was involved from the beginning of the conspiracy to the end. Therefore, the entire amount of drugs was properly attributed to him.

■ The district court also found that Michael was the principal source of cocaine. (Sen. Tr. 237). Michael argues that he should not be held accountable for the entire amount of cocaine because he moved to Arkansas in 1989. He alleges that with this move he was no longer a part of the conspiracy and thus none of the cocaine sold after his move should be attributed to him. However, Griebe testified that Michael continued to visit John in southern Illinois (Sen. Tr. 90), and DEA Special Agent Yacup testified that it was his belief that Michael had set the organization up with a new supplier in Chicago. (Sen. Tr. 274). Furthermore, Michael made no attempt to end the organization's activities prior to the indictment. In the context of a parole decision, we have said that it is not error to hold a petitioner responsible for acts that occurred after he became inactive in a conspiracy. *Augustine v. Brewer*, 821 F.2d 365, 370 (7th Cir.1987). The reason for this is that the petitioner should have been able to reasonably foresee these acts given his prior participation. At the time he entered the conspiracy, he could foresee that the entire conspiracy would reasonably encompass more than 15 kilograms of cocaine. Therefore, the district court's finding with regard to Michael is not clearly erroneous.

Sine argues that he should not be held accountable for the entire amount of cocaine

because he did not become involved until March 1988. Therefore, he asserts that he could not reasonably foresee the entire amount of cocaine involved in the conspiracy. Since the district court offered the same generic explanation for the calculation of Sine's base offense level as for Michael's and John's we must determine whether Sine has identified grounds for remand.[4]

■ It seems odd to say that acts committed by co-conspirators before a defendant joins a conspiracy can be "foreseen" to him or her because by definition "foreseeability" is forward looking. However, we have held that such a result is possible. *United States v. Castillo*, 814 F.2d 351, 355 (7th Cir.1987). *See also United States v. Mojica*, 984 F.2d 1426 (7th Cir.1993). Reasonable foreseeability depends upon the scope of the agreement. *United States v. Edwards*, 945 F.2d 1387, 1394 (7th Cir.1991), *cert. denied sub nom., Martin v. United States*, — U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Therefore, if a defendant agrees with other co-conspirators to an entire conspiracy, including past acts, he or she may be held responsible for those acts. A defendant may not be held liable for past acts of the conspiracy based solely on a "ratification" of the conspiracy or its criminal purpose, however. The government must show that the defendant "was aware, or should have been aware, of the amount involved in earlier transactions." *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.1993). Furthermore, "[t]he sentencing judge should state reasons why each individual defendant was aware of or reasonably foresaw the particular amount of drugs for which he will be held accountable, with reference to supportive evidence." *Id.* (citing *Edwards*, 945 F.2d at 1399).

■ The government argues that Sine embraced the criminal objectives of the entire conspiracy and therefore may be held responsible for the entire amount of cocaine. However, the district court made no finding that Sine could have "foreseen" the past conduct of his co-conspirators. In another "late-

4. The only additional finding with regard to Sine was the district court's determination that he

was "up to [his] eyeballs" in this.

comer" case we have said, "[Defendant] was liable for conspiracy, but his role as a co-conspirator was more limited, and he should be resentenced to reflect his late entry into the conspiracy, of the amount of heroin reasonably foreseeable to him must be less [than that foreseeable to co-conspirators who were members from the beginning]." *Id.*[5] Because no specific finding was made that Sine could have reasonably foreseen the entire amount, his sentence must be vacated and remanded for resentencing in accordance with the requirements of *Goines, Edwards,* and this opinion.

## C. Adjustments to Offense Level.

■ Michael and John argue that the district court erred in refusing to award them a two-level reduction for acceptance of responsibility. Sine argues that although he was given the two-level reduction in theory, he did not receive any benefit from it in fact. John also argues that the district court erred in adding four levels to his base offense level for being a leader or organizer of a conspiracy. We review these contentions for clear error. *United States v. Cojab,* 978 F.2d 341, 343 (7th Cir.1992); *United States v. Haddad,* 976 F.2d 1088, 1095 (7th Cir.1992).

■ With regard to Michael and John, the district court found that they had not come "completely clean". This finding was based partially on Yacup's belief that they had lied during their proffer regarding the amount of cocaine. Michael and John argue that Yacup's opinion was based on their denial that more than 15 kilograms of cocaine were involved. John and Michael conclude that they were therefore punished for exercising their right to dispute the amount. Both point out that they fully admitted their involvement in the conspiracy. They also contend that the district court erroneously based its finding on a belief that a guilty plea alone does not suffice to award the two-point reduction.

We have no question that the record amply supports the district court's determination.

"Entry of a guilty plea, *combined with truthful admission of involvement in the offense and related conduct,* constitutes significant evidence of acceptance of responsibility." *United States v. Cojab,* 978 F.2d 341, 344 (7th Cir.1992) (emphasis added). The district court's finding that John and Michael lied in their proffer indicates that they were not entirely truthful in their admission of involvement. Therefore the district court's finding was not clearly erroneous. Furthermore, the denial of a § 3E1.1 reduction is not a "penalty" and therefore it was not a violation of their Fifth Amendment rights against self-incrimination to deny the adjustment based on their contention that the conspiracy involved less than 5 kilograms of cocaine.

■ Sine argues that the district court erred in sentencing him at the top of the range where the only reason to do so was the district court's question about whether Sine had actually accepted responsibility. Sine cites a Fourth Circuit case where a defendant argued that this offense level was 26, which had a range of 70–87 months. The government argued that the defendant's offense level was 28, which had a range of 87–108 months. The district court refused to make findings and sentenced the defendant to 87 months based on the overlap between the two ranges. *United States v. Willard,* 909 F.2d 780 (4th Cir.1990). The Fourth Circuit reversed on the basis that a judge could not impose a sentence without resolving factual disputes solely because of an overlap. *Id.* at 781. This case is distinguishable, however. Whereas the district court in *Willard* did not compute *any* criminal offense level, the district court here found the exact range into which Sine fell. The district court then sentenced Sine within that range. There is no error in sentencing a defendant within the guideline range as long as that range is accurately determined and the court gives a reason for its sentence. *United States v. Guerrero,* 894 F.2d at 267 (we affirm a sentence as long as it is not imposed

---

5. Recently, we upheld a district court's finding that the total amount of drugs was attributable to a late entrant into a conspiracy. However, in that case, the district court made a specific finding that the defendant could reasonably have foreseen the entire amount of drugs. *Mojica,* 984 F.2d at 1446.

in violation of law or based on an incorrect application of the guidelines).

■ Finally, John argues that the district court erred in adjusting his offense level up four points for being a leader or organizer of a conspiracy of five or more members. Based on our review of the record, this finding was fully supported. Because there is no clear error on this issue, we affirm.

### D. Failure to Comply with Rule 32.

■ The district court did not ask the defendants at sentencing whether they had an opportunity to read their PSIs, nor did the district court ask if they wished to challenge any fact findings in the reports as is required by Fed.R.Crim.P. 32. The government concedes that the district court did not strictly comply with Fed.R.Crim.P. 32.

In *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984) we held that pursuant to Rule 32(a) the district court must make a "clean record" indicating that the defendant has had a realistic opportunity to review and discuss the report and raise objections to it. *Id.* at 1173–74. However, we have since distinguished the situation in *Rone* where the defendant had *no* opportunity to read the report from cases where the defendant had some opportunity to read it but the judge did not make the specific inquiries required by Rule 32. In *United States v. Brown*, 785 F.2d 587 (7th Cir.1986) we held that where a defendant did not deny that he had an opportunity to review the report and disputed issues were addressed by the district court, there was no reversible error. *Id.* at 592.

All three defendants through counsel filed extensive objections to their PSIs. (R.196, 197, 204). The district court held an evidentiary hearing on these objections. Therefore, any error in failing to ask the defendants specifically whether they had an opportunity to review the reports is harmless.

### E. Confrontation of Witnesses.

■ At the sentencing hearing, Agent Yacup summarized other people's statements regarding John's involvement in the conspiracy. John argues that he was never given the right to confront these other people and

therefore his Sixth Amendment confrontation rights were abridged. However, no objection on these grounds was made during the sentencing hearing. Any issue raised for the first time on appeal is considered waived and we will review only for plain error. *United States v. Pryor*, 957 F.2d 478, 482 (7th Cir. 1992). We will reverse a case for plain error only to avert an actual miscarriage of justice. *United States v. White*, 903 F.2d 457, 466–67 (7th Cir.1990).

■ We are not required to reverse in this case. Guideline § 6A1.3 allows a district court to resolve sentencing disputes based on any evidence that has sufficient indicia of reliability to support its probable accuracy. Therefore, hearsay testimony is allowed. *United States v. Agyemang*, 876 F.2d 1264, 1272 (7th Cir.1989) (hearsay allowed at sentencing as long as defendant is given opportunity to show why the hearsay information is wrong). This testimony came from a government agent who obtained his information during interviews with other co-conspirators. Most of the statements made by others to Yacup incriminated the person speaking as well as John. Therefore, we conclude that these statements were reliable and affirm on this issue.

### F. Ineffective Assistance of Counsel.

John and Michael argue that their pleas were involuntary because they received ineffective assistance of counsel. John and Michael both allege that their individual attorneys told them that if they pled guilty, the maximum sentence would be 60 months. They insist that they relied on this misrepresentation in deciding to plead guilty, causing their pleas to be involuntary. In addition, Michael makes other allegations concerning ineffective assistance.

■ However, we do not generally consider claims of ineffective assistance of counsel for the first time on direct appeal from guilty pleas. *United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1873, 123 L.Ed.2d 492 (1993). We will make such a determination only when the record is adequate to do so. *United States v. Aquilla*, 976

F.2d 1044, 1053 (7th Cir.1992). The record here does not indicate what John and Michael's attorneys told them. We cannot tell if they were given erroneous or bad advice. Therefore, without the proper record, we dismiss the claims of ineffective assistance of counsel without prejudice.

### III.

For the foregoing reasons, we AFFIRM the validity of the guilty pleas and convictions for all defendants and John and Michael's sentences. We VACATE and REMAND Sine's sentence for an evidentiary determination of the amount of cocaine attributable to him. We DISMISS without prejudice the claims of ineffective assistance of counsel.