UNITED STATES of America, Plaintiff–Appellee,

v.

Steven D. PHILLIPS and Willie B. Meredith, Jr., Defendants–Appellants.

Nos. 93–2170, 93–3352.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1994.

Decided Oct. 6, 1994.

Thomas Edward Leggans, Office of U.S. Atty., Crim. Div., Fairview Heights, IL (argued), Michael C. Carr, Asst. U.S. Atty., Benton, IL, for U.S.

John D. Long, Patrick Moloney Long (argued), Chicago, IL, for Steven D. Phillips.

Samuel G. Beggs, Harrisburg, IL (argued), for Willie B. Meredith, Jr.

Before WOOD, Jr., COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Tyrone A. Johnson, Willie B. Meredith, Jr., Anson Young, Stacy Shipp, and Steven Phillips were all charged with conspiring to distribute more than five kilograms of cocaine in Jefferson County, Illinois. Only two of the five defendants, Willie B. Meredith and Steven Phillips, are parties to this consolidated appeal.

Most of the factual circumstances of this conspiracy are immaterial for our purposes. In a nutshell, Tyrone Johnson operated a discotheque called the Steppin Out Disco. He hired Steven Phillips to manage the disco, and Willie Meredith as a security officer. The Steppin Out Disco was also the site of Johnson's cocaine business. Johnson stored drugs and large amounts of cash at the disco. Drugs were distributed to purchasers from the bar and from a drive-through window at the establishment.

In addition to his duties as disco manager, Phillips also carried a gun and sometimes delivered cocaine to Meredith and others. Meredith was likewise involved in Johnson's cocaine business. Meredith was not only security officer for the disco: he also acted as an "enforcer" for the cocaine distribution conspiracy. Meredith carried a gun and enforced the collection of drug debts and unpaid loans owed to Tyrone Johnson.

Meredith and Phillips both pled guilty to Count Five of the indictment. Both entered into plea agreements in which they consented to cooperate with the government. The government agreed, pursuant to U.S.S.G. § 1B1.8, that it would not use incriminating evidence supplied by the defendants under the plea agreements at sentencing to increase their guideline ranges. Presentence reports were prepared on each of the two defendants, and each was sentenced at a separate sentencing hearing. We now consider in turn Meredith's and Phillips' arguments on appeal.

### Willie Meredith

Because Willie Meredith was convicted of conspiring to distribute cocaine, the district court calculated Meredith's base offense level under U.S.S.G. § 2D1.1. Section 2D1.1 specifies a base offense level of 32 for a defendant responsible for at least 5 but less than 15 kilograms of cocaine. The district court increased Meredith's base offense level of 32 by 2 points for having a firearm during the commission of his offense, but reduced his offense level by 2 points for acceptance of responsibility. The district court concluded that, with a criminal history category of 3, Meredith's guideline sentence range was 151

to 188 months. The court sentenced Meredith at the top of the sentencing range, to 188 months imprisonment.

Meredith contends that the district court erroneously sentenced him on the basis of responsibility for more than 5 but less than 15 kilograms of cocaine. He first claims that the district court erred by attributing to him amounts of cocaine that the conspiracy distributed before his involvement, amounts which were not reasonably foreseeable to him. In a related argument, he alleges that the district court failed to make its cocaine quantity findings with sufficient specificity.

██ The district court's determination of the amount of cocaine reasonably foreseeable to Meredith is a factual determination, which we will reverse only if clearly erroneous. *United States v. Wagner*, 996 F.2d 906, 913 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994). However, "[b]ecause the quantities of drugs are so important to sentencing in a narcotics case, the court must make an explicit finding as to the calculation of drug quantity and offense level and how it arrived at the sentence." *Id.* (citing *United States v. Leichtnam*, 948 F.2d 370 (7th Cir.1991)).

At Meredith's three-day sentencing hearing, the government offered evidence of the amount of drugs involved in the conspiracy through FBI Special Agent Isaac Bratcher. Prior to the hearing, Bratcher was asked to summarize his reports and interviews with individuals involved in the case and to calculate the amounts of cocaine that the conspiracy dealt.

Bratcher prepared a one-page chart outlining the amounts of cocaine alleged to have been brought into the conspiracy for distribution.[1] This one-page chart was eventually admitted as the government's Exhibit 5. Bratcher concluded in the chart that the conspiracy had distributed 7,915 grams of cocaine.

The government relied almost entirely upon Bratcher's Exhibit 5 chart and his accompanying testimony at the sentencing hearing to establish the amount of cocaine for which Meredith was to be sentenced. The Exhibit 5 chart contained 12 separate quantities of cocaine witnesses alleged members of the conspiracy possessed for distribution, ranging in time from February/March of 1991 to early January 1992.[2]

The district court found that, upon reviewing the Exhibit 5 chart, the total of the entries amounted to a quantity "certainly more than five kilograms." The court specifically excluded one entry from the chart— Item 4, dated April 1991, in the amount of 500 grams—because there was some question as to whether that 500 gram quantity was duplicative of a 2,000 gram quantity reflected in a preceding entry on the chart. Because the remaining entries of the chart added up to a total of 7,415 grams, the district court correctly concluded that "even leaving that out, you still have more than five kilograms."

██ We believe that the district court made a sufficiently specific finding of the amount of cocaine the conspiracy distributed. *See Wagner*, 996 F.2d at 913. Additionally, our review of the record indicates that, having excluded Item 4, the district court did not rely on repetitive or unreliable testimony; therefore, the court's determination was not clearly erroneous. *See id.*

██ In determining the quantity of drugs upon which a defendant is to be sentenced under section 2D1.1, however, a district court

---

1. Bratcher actually also devised a second, alternate method of calculating the amount of cocaine attributable to Meredith, consisting of a synopsis of witness accounts detailing quantities the witnesses either purchased from Meredith or saw in his possession. Under the second method, Bratcher concluded that 6,478 grams of cocaine were attributable to Meredith. We need not address the validity of Bratcher's second method.

2. The eleven quantities on Bratcher's chart are as follows: Item 1, February/March 1991—35 grams; Item 2, March 1991—168 grams; Item 3, April 1991—2,000 grams; Item 4, April 1991—500 grams; Item 5, April/May 1991—280 grams; Item 6, April/May 1991—1,000 grams; Item 7, June 1991—1,000 grams; Item 8, early September 1991—1,000 grams; Item 9, late September 1991—252 grams; Item 10, October 1991—500 grams; Item 11, November 1991—1,000 grams; Item 12, late December 1992/early January 1992—180 grams.

may not automatically deem the defendant responsible for all drug quantities that have passed through a conspiracy. Instead, the district court must take into account only the "relevant conduct" of the defendant. U.S.S.G. § 1B1.3 (Nov. 1992). In *United States v. Guerrero,* 894 F.2d 261 (7th Cir. 1990), we stated that "a defendant who pleads guilty to a conspiracy charge is held accountable, for purposes of determining his relevant conduct and the applicable guideline range, for all drug transactions that he was aware of or that he should have reasonably foreseen." *Id.* at 266; *see also Wagner,* 996 F.2d at 913. "Reasonable foreseeability is the divining rod of the relevant conduct sentencing provision." *United States v. DePriest,* 6 F.3d 1201, 1212 (7th Cir.1993).

In *United States v. Edwards,* 945 F.2d 1387 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992), we explained that

> conduct of co-conspirators—*even past conduct*—can be considered 'reasonably foreseeable' to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct. Of particular importance in determining the level of commitment on the part of an individual defendant is the scope of the agreement between that defendant and his co-conspirators.

*Id.* at 1393–94 (emphasis added).

Meredith argues that he joined the conspiracy in "April/May" of 1991 and that he did not know about the conspiracy's cocaine transactions from February to April of 1991.[3] He claims that the scope of his agreement with his co-conspirators was so limited that the district court erred in determining that the February to April amounts were foreseeable to him.

▪ Once again, we are satisfied that the district court made sufficiently specific findings, this time regarding whether past amounts of cocaine dealt by the conspiracy were reasonably foreseeable to Meredith.

The district court, moreover, properly held that Meredith reasonably foresaw the entire amount of cocaine the conspiracy distributed.

The court heard three days of evidence at Meredith's sentencing hearing. It made detailed findings regarding the foreseeability of past amounts of cocaine dealt by the conspiracy and referred to supporting evidence presented to it during the sentencing hearing. First, the district court made detailed findings regarding the depth of commitment Meredith pledged to the conspiracy. It found that "Mr. Meredith's commitment to this organization was very strong." It also found that Meredith "[went] around carrying guns, running errands, . . . [and] collecting debts in a drug transaction," and that Meredith had an "intimate . . . relationship with this overall operation, and [was] an enforcer in it."

The court then found that, because of Meredith's degree of commitment to the conspiracy, it was foreseeable to Meredith that the "conspiracy had been in operation [before Meredith's membership]. It [was] foreseeable that they had dealt in the past in dealing in cocaine when you get into it." To support its finding, the court referred to evidence presented to it in the form of testimony by a Berk Cunningham that Meredith had gone to collect drug money from Cunningham without delivering any cocaine to him. From this evidence, the court concluded that Meredith must have known that the debt collection "would have had to have been for past dealings because he didn't deliver any cocaine to him then. So there was an obvious knowledge then that these people had been dealing with [the leader of the conspiracy] and others over long periods of time, and he had to know that." Furthermore, the court found that Meredith's extensive dealings with two individuals who distributed cocaine for Tyrone Johnson—Steven Phillips and a man named Eddie Bennett—reinforced its conclusion that Meredith should have been fully aware of the small amounts of cocaine the conspiracy distributed during the two months

---

**3.** Meredith challenges the inclusion of 5 separate quantities of cocaine that witnesses said the conspiracy distributed before Meredith's entry into the conspiracy. The amounts are as follows: February/March 1991—35 grams; March 1991—168 grams; April 1991—2,000 grams; April 1991—500 grams; and April/May 1991—280 grams. *See also supra* note 2.

before his entry into Tyrone Johnson's enterprise.

The district court findings and our review of the record support the conclusion that Meredith "was aware, or should have been aware, of the amount involved in earlier transactions." *Wagner*, 996 F.2d at 914 (citing *United States v. Goines*, 988 F.2d 750, 755 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993)). Hence, we conclude that the district court properly held Meredith responsible for the pre-May 1991 amounts that the conspiracy distributed.

Finally, Meredith complains for the first time on appeal that the district court's calculation of the cocaine quantity was clearly erroneous because it considered quantity information Meredith disclosed pursuant to his cooperation with the government under his plea agreement. Specifically, Meredith alleges that the quantities represented as Items 8, 9, and 11 of government's Exhibit 5 quantity chart could only have come from Meredith's disclosures to federal agents pursuant to his plea agreement. Meredith claims that for each of three entries, "[t]he chart and testimony provided by the Government clearly indicated that [the entries] were from the interview with Meredith and were uncorroborated by any other source and therefore these amounts should be excluded."

■ We note initially that Meredith cannot complain for the first time on direct appeal that the government breached his plea agreement. *United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1873, 123 L.Ed.2d 492 (1993); *United States v. Pryor*, 957 F.2d 478, 482 (7th Cir.1992). Because Meredith did not raise this issue at the sentencing hearing, he has forfeited it.

■ We may, however, reverse even on a forfeited ground, if the district court committed plain error. "A reversal on the basis of plain error can be justified only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice. Therefore, to establish plain error, [Meredith] must show that but for the

breach of the plea agreement, his sentence would have been different." *D'Iguillont*, 979 F.2d at 614 (citations and quotations omitted).

■ As a matter of simple arithmetic, Meredith cannot demonstrate that his sentence would have been any different even if the district court had excluded Items 8, 9, and 11. The district court concluded that the amount of the cocaine the conspiracy distributed was 7,415 grams and that Meredith reasonably foresaw the entire amount when he joined the conspiracy. Items 8, 9, and 11 added together total only 2,252 grams.[4] Hence, excluding the three items in question, the district court would still have arrived at a total of 5,163 grams attributable to Meredith. This amount is still greater than 5 kilograms but less than 15 kilograms; thus, under section 2D1.1, Meredith's base offense level would have remained the same. Because Meredith cannot show that the alleged breach of his plea agreement could constitute plain error, we do not rule on his forfeited argument on appeal.

### Steven Phillips

The district court sentenced Steven Phillips to 70 months imprisonment for his role in the conspiracy. Phillips raises two arguments on appeal. First, he contends that the prosecutor breached the terms of his plea agreement and that he was sentenced improperly as a result. Second, Phillips alleges that he received ineffective assistance of counsel in violation of his Sixth Amendment rights.

Like Meredith, Phillips did not object to any breach of his plea agreement at the sentencing hearing. As we have already explained, a defendant may not raise the breach of his plea agreement for the first time on direct appeal. Thus, we review Phillips' contentions on a plain error standard.

■ Phillips cannot show plain error resulting from any breach of his plea agreement. Phillips begins by claiming that the prosecutor breached his plea agreement at sentencing by disclosing to the court "incrim-

---

4. *See supra* note 2 for a listing of items 8, 9, and 11.

inating" drug quantity information learned through Phillips' cooperation with the government under the agreement. Phillips' argument is entirely spurious. A review of the record reveals that the prosecutor disclosed the drug quantity information only to explain to the court that such information could *not* be used against the defendant according to the terms of the plea agreement. The district court, relying on a presentence report that erroneously took into account the excluded information, was about to set Phillips' base offense level at 32. The prosecutor, after explaining at length that the court was bound to disregard any amount Phillips disclosed during his interviews with the government, finally convinced the court to assign Phillips the base offense level both parties agreed upon in the plea agreement, which was level 26. Because the prosecutor did not use the proffered information *against* Phillips, but rather used it to save him from receiving a higher sentence, Phillips cannot argue that the disclosure was a breach of the plea agreement resulting in plain error.

Phillips, however, advances yet another way in which the prosecutor breached his plea agreement. He urges that the prosecutor failed to inform the court of his voluntary cooperation with the government, as promised in the agreement. Phillips states elliptically in his brief that the government neglected to tell the court that the government had interviewed him "to find out about a drug source in Chicago." There is not enough information in the record to either confirm or negate the existence of this interview. Nor does Phillips give us any clue how this information, if indeed it exists or is relevant, would have affected his sentence. Under these circumstances, we certainly cannot find that plain error occurred due to the alleged breach during Phillips' sentencing.

Finally, Phillips asserts that, because his attorney failed to accompany him to an interview with the government in which he disclosed incriminating information, he has received ineffective assistance of counsel. As we have repeatedly held on direct appeal

from guilty pleas, we generally do not consider claims of ineffective assistance of counsel. *See, e.g., D'Iguillont*, 979 F.2d at 614; *United States v. Fisher*, 772 F.2d 371, 373 (7th Cir.1985). This is because there is usually an insufficient record on direct appeal from which to review an ineffective assistance of counsel claim. *United States v. Jean*, 25 F.3d 588, 590–91 n. 1 (7th Cir.1994). In this case, Phillips' ineffective assistance claim rests exclusively on matters outside of the record. Thus, we decline to consider Phillips' argument.[5]

### Conclusion

For the foregoing reasons, Willie Meredith's and Steven Phillips' sentences are AF-FIRMED.

---

**5.** Phillips may raise his ineffective assistance of counsel claims in a collateral proceeding.

*D'Iguillont*, 979 F.2d at 614.