91 F.3d 147
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael HENDERSON, Defendant-Appellant.
 No. 95-3412.
 United States Court of Appeals, Seventh Circuit.
 Briefs Submitted Feb. 20, 1996.
Decided June 27, 1996.
 
 1
 Before POSNER, Chief Judge, FLAUM, Circuit Judge, and SHABAZ, District Judge*.
 
 ORDER
 
 2
 Defendant Michael Henderson, along with Leroy Nolan, was convicted of conspiring to distribute cocaine base ("crack"), distributing crack, and using a firearm in relation to drug trafficking crimes. In their original appeal to this Court, both defendants challenged their convictions, and Henderson also challenged his sentence. This Court affirmed the convictions and Henderson's sentence in all respects except that we reversed and remanded for recalculation of the proper amount of drugs attributable to Henderson. U.S. v. Henderson, 58 F.3d 1145, 1147 (7th Cir.1995) ("Henderson I "). With respect to the drug quantity determination, Henderson argued in his first appeal that the district court clearly erred by holding him responsible for 10% of the amount of cocaine base that a government witness, Bryant Nolan ("Bryant"), ascribed to him. We found that the district court's crediting of 10% of the cocaine amount appeared to be "unsupported conjecture" rather than a "restrained approximation." Id. at 1152. We therefore concluded that the government did not satisfy its burden of proving the quantity of drugs by a preponderance of the evidence. Id. On remand, the district court conservatively estimated the drug quantity based on Bryant's testimony and other corroborating evidence. In this successive appeal, Henderson again argues that the district court clearly erred in estimating the quantity of drugs attributable to him. Finding no error in the district court's approximation of the drug quantity, we affirm Henderson's sentence.
 
 
 3
 During the spring and summer of 1993, Henderson operated an organization that distributed crack in Rockford, Illinois. At Henderson's original sentencing hearing, Bryant testified that he sold crack at the direction of Henderson. In estimating the quantity of drugs that he distributed, Bryant testified that on an average day he sold approximately seven three-gram packages of crack. He also stated that from May until June 25, 1993, he dealt crack approximately four to five days per week and that from June 25th until July 28, 1993, the date the conspiracy ended, he dealt crack three days per week. Based on these figures, the government calculated that Henderson was responsible for 840 grams of crack that Bryant distributed. The district court found that Bryant's testimony was credible regarding the operation of the conspiracy, the method of distribution, and Henderson's role in the conspiracy. The court, however, attributed to Henderson only 10% of the amount to which Bryant had testified (84 grams), finding that it could not, for various reasons, credit the full extent of Bryant's drug quantity estimation. The court therefore held Henderson responsible for distributing between 50 and 150 grams of crack, resulting in a base offense level of 32. U.S.S.G. § 2D1.1(c)(4).[1]
 
 
 4
 We held that the district court committed clear error in calculating the quantity of drugs attributable to Henderson:
 
 
 5
 After holding that the 18 grams did not adequately represent the size of the conspiracy, the court was required to approximate its true scale. It could do so either by relying on testimony if found credible in its totality or regarding certain transactions, or by relying on corroborating evidence. Instead, the court credited Henderson with 10% of the amount described by Bryant. While it never stated that it only found Bryant's testimony 10% credible, the court's methodology gives us substantial pause.
 
 
 6
 Drug quantity findings ... must ultimately be based on reliable information. We encourage courts to make conservative estimates, especially when presented with generalized testimony.... Without setting any threshold percentage, at some point a court's estimation will seem less like a restrained approximation and more like unsupported conjecture. Here, the court stated that its 10% multiplier may have been an arbitrary figure, but used it because it found there was significant evidence of a conspiracy. However, the question under section 2D1.1(a)(3) is not whether the defendant engaged in other sales, but rather, how much cocaine [base] was involved.... The court could not appropriately choose a random number simply because it believed more drugs were involved than the sales indicated. Its procedure leads us to conclude that the court did not have sufficient faith in Bryant's testimony to use it as the basis for attributing further amounts to Henderson.
 
 
 7
 Id. (internal citations and quotations omitted). We found that on remand the district court could base its drug quantity findings on Bryant's testimony, provided that it "explain[s] its findings so that we can have confidence that the court believes that Bryant's testimony is sufficiently credible in certain respects or is corroborated by other reliable evidence." Id. at 1152 n. 1. Notably, during the original appeal, but not at the original sentencing hearing, the government argued that the district court's calculation could be affirmed based on corroborating evidence contained in the record, including (1) the number of plastic baggies missing from boxes seized at a drug house operated by Henderson, combined with testimony that the baggies were used to package specific quantities of crack; (2) the seizure of $2179 in cash from the defendant, as well as testimony indicating that the defendant's drug house had been robbed of $2000; and (3) the recording of a conversation in which the defendant quoted Melvin Jones a price for a quarter kilogram of crack. Id. at 1152-53. We refused to uphold the sentencing calculation on these grounds not before the district court, leaving the initial consideration of this evidence to the district court on remand. Id. We expressed our belief, however, that the evidence of missing baggies would be sufficient to sustain the district court's drug quantity determination. Id. at 1153.
 
 
 8
 On remand, the district court found that Bryant's testimony was credible regarding the extent of the conspiracy, its organization, the distribution method, and the roles of the conspirators. Yet the district court again refused to credit the full extent of Bryant's drug quantity estimates. The court doubted the complete accuracy of Bryant's figures, noting that Bryant was attempting to approximate quantities of crack that he had sold more than a year before his testimony. The court found, however, that there was extensive evidence that corroborated Bryant's testimony indicating that the conspiracy distributed more crack than was evidenced by the sale of 18 grams to Melvin Jones. For example, at resentencing the government presented the testimony of FBI Special Agent Christopher Cole. Agent Cole testified that the plastic baggies missing from Henderson's drug house represented 100.2 grams of crack.[2] In contrast to the first sentencing hearing, the district court found that this calculation, as well as the money seized from Henderson and the price quote for 250 grams of crack, corroborated Bryant's testimony that the conspiracy distributed crack on a large scale. Bryant testified that beginning a couple of weeks after he was released from jail on April 16, 1993 and continuing through June 25, 1993, he sold an average of seven 3 gram packages of crack per day approximately four to five days per week. The district court noted that Bryant did not specify the exact date when he started dealing crack and therefore conservatively credited Bryant with selling drugs during a five-week period prior to June 25th. Given the corroborating evidence and the inexact nature of Bryant's testimony, the court conservatively estimated that Bryant had sold two packages of crack per day and worked three days per week during this time period. These estimations yielded a finding that 90 grams of crack were sold prior to June 25, 1993. Bryant also testified that from June 25th until July 28, 1993, he dealt seven three-gram packages of crack per day approximately three days per week. The district court conservatively estimated that Bryant sold two packages a day on two days per week for three weeks, amounting to 36 grams of crack sold after June 25th. The court therefore attributed a total quantity of 144 grams of crack to Henderson, resulting in the same base offense level of 32 that the court reached at Henderson's first sentencing. The court imposed concurrent sentences of 300 months of imprisonment for the drug charges and a consecutive sentence of 60 months imprisonment for the firearms charge.
 
 
 9
 Henderson argues that, on resentencing, the district court erred in calculating the amount of cocaine attributable to him under the Sentencing Guidelines. We review these factual findings of the district court for clear error. United States v. Phillips, 37 F.3d 1210, 1213 (7th Cir.1994). Under this standard of review, we will affirm the court's findings unless "the entire body of evidence leaves us with the definite and firm conviction that a mistake has been committed." United States v. Ferguson, 35 F.3d 327, 333 (7th Cir.1994), cert. denied, 115 S.Ct. 1832 (1995). At sentencing "the government bears the burden of establishing the quantity of drugs by a preponderance of the evidence." United States v. Beler, 20 F.3d 1428, 1431 (7th Cir.1994).
 
 
 10
 Henderson correctly asserts, as he did on his first appeal, that a defendant has a right to be sentenced based on testimony with a "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Henderson maintains that at resentencing the district court reduced Bryant's drug quantity estimates arbitrarily, just as it had done at Henderson's original sentencing. The defendant thus argues that the district court again "did not have sufficient faith in Bryant's testimony to use it as the basis for attributing further amounts to Henderson." Henderson I, 58 F.3d at 1152. Certainly the court could not reduce Bryant's drug quantity estimate arbitrarily. Id. at 1152. We noted in Henderson I, however, that once the court determined that the 18 grams of crack did not reflect the true scale of the conspiracy, it had a duty to approximate the quantity of crack involved. 58 F.3d at 1151. We held that the district court could fulfill this duty by relying on credible testimony of drug quantities or by relying on corroborating evidence. Id. at 1152. In fact, we specifically stated that the calculation of the drug quantity based on the evidence of missing baggies could sustain the district court's determination of Henderson's base offense level. Id. at 1153. At resentencing the district court found that Bryant's testimony was corroborated by the 100.2 grams of crack derived from the missing baggies, the cash seized from Henderson, and Henderson's price quote for 250 grams of crack. The court determined that Bryant's testimony, in light of this corroborating evidence, supported a finding that 144 grams of crack was attributable to Henderson. Given the corroborating evidence, the district court did not err by crediting a limited portion of Bryant's drug quantity estimations. See id. at 1152-53; United States v. Acevedo, 28 F.3d 686, 689 (7th Cir.1994) (finding that district court permissibly relied on corroborated portion of informant's testimony); United States v. Villarreal, 977 F.2d 1077, 1081 (7th Cir.1992) (holding district court properly relied on cash seized from defendant to support drug quantity determination), cert. denied, 507 U.S. 945 (1993). Rather than adopting arbitrary figures or engaging in "nebulous eyeballing," the court acted cautiously and conservatively approximated the quantity of crack that Henderson was responsible for distributing. The district court's restrained estimate of the relevant drug quantities was not clearly erroneous. See United States v. Garcia, 66 F.3d 851, 859 (7th Cir.1995) (allowing district court to conservatively sentence defendant in 50-150 kilogram range where testimony suggested that defendant distributed over 200 kilograms). We therefore AFFIRM Henderson's sentence.
 
 
 
 *
 The Honorable John C. Shabaz, of the United States District Court for the Western District of Wisconsin, sitting by designation
 
 
 [1]
 The district court attributed an additional 18 grams of crack to Henderson based on the testimony of Melvin Jones, a government informant who purchased this amount at a drug house operated by Henderson. The defendant does not dispute his responsibility for the 18 grams purchased by Jones
 
 
 [2]
 Agent Cole determined that there were 501 missing baggies. Cole testified that crack is commonly packaged in the two bottom corners of the baggies, creating 1002 missing baggie corners. In Cole's drug investigation experience, 0.1 grams was the smallest distribution quantity of crack. He thus calculated the total amount of crack from the missing baggies to be 100.2 grams. Bryant's testimony at the original sentencing hearing regarding the conspiracy's packaging methods confirms Cole's analysis. This testimony, which the district court found credible, revealed that members of the conspiracy cut two corners off each baggie and sold 0.1 grams of crack in the baggie corners. See id. at 1153