**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Glen R. RICHARDSON, Defendant–**
**Appellant.**

**No. 96–2215.**

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1997.

Decided July 31, 1997.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Glen Richardson was arrested for driving on a suspended Illinois driver's license. While searching Richardson's car, the arresting state trooper found a handgun in a shaving bag located underneath the front passenger seat. Richardson was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Richardson pleaded guilty to the charge after the district court denied his motion to suppress the handgun as evidence. The court sentenced Richardson to 180 months' imprisonment. Richardson appeals the denial of his motion to suppress and his sentence. We affirm.

## BACKGROUND

On May 1, 1995, Richardson was stopped by State Trooper John Davidson for speeding on an interstate highway in Illinois. Richardson produced a Missouri driver's license and explained that his driving privileges in Illinois had been suspended. After Trooper Davidson confirmed the suspension, he arrested Richardson for driving on a suspended license and for driving on a foreign operator's license in Illinois while his Illinois license was suspended. Trooper Davidson handcuffed Richardson, placed him in the back seat of the squad car, and called for a tow truck.

Trooper Davidson began to search Richardson's car. Under the front passenger seat, he discovered a brown shaving bag, zipped only about an inch. Trooper Davidson looked in the bag and found a fully loaded .357 Magnum revolver. Unsolicited, Richardson stated that he kept the gun for his protection while traveling. Richardson was charged with being a felon in possession of a firearm.

Richardson moved to suppress the handgun as evidence, arguing that the search of his car violated his rights under the Fourth Amendment. At the hearing on the motion to suppress, Trooper Davidson explained that he found the gun during a routine inventory

Rodger A. Heaton (argued), James E. Beckman, Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Gigi A. Gilbert (argued), Chicago, IL, for Defendant–Appellant.

search of Richardson's car. State police policy provides that before a vehicle is towed, its contents must be inventoried in order to protect the police and the towing operator from claims of missing property. Richardson argued that the policy did not protect against unreasonable searches because it did not sufficiently direct officers as to what to do with containers found in vehicles. The district court denied the motion to suppress on the ground that the handgun was discovered during a valid inventory search pursuant to the state policy.

Richardson and the Government entered into a plea agreement. Richardson agreed to plead guilty and to cooperate with the Government. The Government agreed that it would inform the court of any cooperation by Richardson, that it would not recommend a sentence higher than the middle of the applicable sentencing range, and that it would suggest that Richardson be given credit for accepting responsibility. The plea agreement stated that Richardson faced a maximum penalty of ten years' imprisonment and a $250,000 fine unless the probation office determined that he qualified as an armed career criminal, in which case, he would be sentenced to a minimum of fifteen years' imprisonment and fined $250,000. The agreement also explicitly permitted Richardson to withdraw his guilty plea if the armed career criminal provision became applicable. At Richardson's change of plea hearing,[1] the district court explained the terms of the plea agreement, and Richardson indicated that he understood them.

The probation office determined that Richardson should be classified as an armed career criminal. At sentencing, Richardson made multiple objections to his criminal history calculations, all of which were rejected by the court. The court determined that Richardson had an offense level of thirty and a criminal history category of V, which produced a sentencing guideline range of 151 to 188 months. However, because Richardson qualified as an armed career criminal, the final applicable guideline range was 180 to 188 months. The court sentenced Richardson to 180 months.

On appeal, Richardson argues that the district court erred in denying his motion to suppress the handgun and that the court violated Rule 11 of the Federal Rules of Criminal Procedure by failing to advise him of the potential penalties he faced. He also requests that the case be remanded to the district court in order to more fully develop the record on the issue of ineffective assistance of counsel.

## ANALYSIS

### A. *Suppression of Evidence*

■■■ Richardson maintains that Trooper Davidson violated his Fourth Amendment right to be free from unreasonable searches and seizures when he opened his shaving bag, and therefore the district court erred in denying his motion to suppress the handgun. We review warrantless search and seizure issues *de novo*. *United States v. Bruce,* 109 F.3d 323, 328 (7th Cir.1997) (citing *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). "In conducting our *de novo* review, however, we accept the district court's findings of historical fact unless they are clearly erroneous and 'give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United States v. Osborn,* 120 F.3d 59, 62 (7th Cir.1997) (quoting *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1663).

We find two separate grounds on which we may affirm the district court's denial of Richardson's motion to suppress. First, we agree with the district court that Trooper Davidson's opening of Richardson's shaving bag was part of a legitimate inventory search. Second, the opening of the shaving bag was part of a valid search incident to Richardson's arrest.

■■■ As to the first basis, Richardson argues that the Illinois policy regarding inventory searches does not expressly explain whether and when to open containers found

---

1. Richardson originally entered a plea of not guilty on August 4, 1995. He changed his plea to guilty on November 27, 1995.

in cars during such searches, and therefore the search of the shaving bag violated the Fourth Amendment. The policy provides, in relevant part:

> An examination and inventory of the contents of all vehicles/boats towed or held by authority of department officers will be made by the officer who completes the Tow Report. This examination and inventory will be restricted to those areas where an owner or operator would ordinarily place or store property or equipment in the vehicle/boat, and would normally include front and rear seat areas, glove compartment, map case, sun visors, and trunk and engine compartments.

Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). Generally, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." *Id.* at 374, 107 S.Ct. at 742. As for closed containers, so long as standardized criteria or established routines exist regarding the opening of closed containers, searching such containers is permissible. *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (citation omitted). The existence of a police policy, however, does not necessarily eviscerate officers' discretion in deciding whether to search a particular container.

In *Florida v. Wells*, the Supreme Court explained:

> [I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical "all or nothing" fashion.... A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of

closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.

495 U.S. at 4, 110 S.Ct. at 1635.

In the wake of *Wells*, this Court decided *United States v. Wilson*, 938 F.2d 785 (7th Cir.1991), *cert. denied*, 502 U.S. 1062, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992). In *Wilson*, we held that a warrantless inventory search is constitutionally permissible if "(1) the individual whose possession is to be searched has been lawfully arrested," and "(2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." 938 F.2d at 789.

Wilson was stopped by an Illinois state trooper for a traffic violation. After the trooper discovered that there was an outstanding warrant for Wilson's arrest, he arrested Wilson and placed him in the squad car. The trooper then conducted an inventory search of Wilson's car, pursuant to a state police policy which is identical, in all relevant respects, to the policy that was in effect when Trooper Davidson conducted the inventory search of Richardson's car. While searching the trunk, the trooper found two bags. The trooper opened the bags and found a pistol and ammunition in one bag and two scales and cocaine in the other bag. The district court denied Wilson's motion to suppress the evidence obtained during the search, reasoning that, although the policy did not use the buzz words "closed container," the Illinois policy clearly established that officers may open closed containers because the policy contained a requirement that the contents of a vehicle be examined and inventoried and a requirement that personal effects be listed. *Id.* at 789–90.

*Wilson* is dispositive of the issue at bar. As directed by the policy, Trooper Davidson searched the contents of Richardson's car for the purpose of identifying and listing valuables on the Tow–In Report. The search

included the shaving bag, which, according to *Wilson*, is a permissible place to look for valuables.

Richardson argues that *Wilson* was wrongly decided. He attempts to distinguish the types of containers listed in the policy from the shaving bag searched here. He argues that the storage containers listed in the policy are connected to, or part of, the car, whereas his shaving bag was a separate container not affixed to the car. In light of the purposes behind inventory searches, Richardson's distinction does not matter. Searching unlocked containers found in the passenger compartment or the trunk of a car accomplishes the same purpose as searching the containers listed in the policy—it protects against claims of stolen or damaged personal property. Moreover, the plain language of the policy does not prohibit the search of containers that can be removed from a car. The policy restricts the search to areas where owners or operators would normally place personal property and lists some examples of containers and compartments where officers would ordinarily look during an inventory search. Richardson's shaving bag, which was easily detected underneath the front seat of his car, was a container of appropriate size and function that could have contained valuable personal property.

*Wells* and *Wilson* also make clear that officers retain some level of discretion in deciding whether to open closed containers found during an inventory search. Trooper Davidson testified that if he came across a piece of locked luggage, for example, he would normally leave it locked. If the luggage was unlocked, he would check it for valuables. Trooper Davidson's method for deciding whether to open a particular container is consistent with the Illinois policy, as well as with *Wells* and *Wilson*. The record does not suggest that Trooper Davidson's search was merely "a ruse for a general rummaging in order to discover incriminating evidence." *See Wells*, 495 U.S. at 4, 110 S.Ct. at 1635.

 The second basis for affirming the district court's denial of Richardson's motion to suppress the gun is that the search of

Richardson's shaving bag was part of a valid search incident to arrest. "[A] police officer who has made a lawful custodial arrest of the occupant of an automobile may 'as a contemporaneous incident of that arrest, search the passenger compartment of that automobile [as well as] ... the contents of any containers found within the passenger compartment ... whether [the container] is open or closed....'" *United States v. Fiala*, 929 F.2d 285, 288 (7th Cir.1991) (quoting *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981)). Containers may be searched "since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Belton*, 453 U.S. at 461, 101 S.Ct. at 2864. Under *Belton*, a "container" is "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, *bags*, clothing, and the like." *Id.* at 460–61 n. 4, 101 S.Ct. at 2864 n. 4 (emphasis added).

 The *Belton* rule is confined to searches of the interior of the passenger compartment of an automobile. *Id.* The passenger compartment is within the arrestee's "immediate control"—it is an "area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." *Id.* at 460, 101 S.Ct. at 2864 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). Logic dictates that "if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id.*

It is undisputed that Richardson was the subject of a lawful custodial arrest for driving without a valid Illinois driver's license. The search of Richardson's car and the search of his shaving bag immediately followed that arrest. The shaving bag was located inside the passenger compartment of the car which Richardson was driving just before he was arrested. The shaving bag was within Richardson's "immediate control" under *Belton* and *Chimel*, and, thus, the search of the shaving bag was a search inci-

dent to a lawful custodial arrest and did not violate the Fourth Amendment.

■ The Government explained at oral argument that the search incident to arrest doctrine was not raised in the district court because Trooper Davidson testified at the suppression hearing that he did not search Richardson's vehicle out of concern for his safety. We remind the parties that an officer's subjective fear (or lack thereof) for his safety is irrelevant for purposes of a search incident to arrest. Trooper Davidson was authorized, under the search incident to arrest doctrine, to search Richardson's car after he made a lawful custodial arrest of Richardson.

### B. Sentencing and Rule 11(c)

■ Richardson next asserts that his sentence must be vacated because his plea was not voluntary. The plea agreement entered into by the parties created an "either/or" arrangement regarding sentencing-Richardson would face one set of penalties if he qualified as an armed career criminal, and he would face a different set of penalties if he did not so qualify. Although the district court advised Richardson of both alternatives at the change of plea hearing, Richardson argues that the district court failed to inform him of the *exact* mandatory minimum and maximum penalties, as required by Rule 11 of the Federal Rules of Criminal Procedure.[2]

■ Rule 11 is designed to insure that a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action open to [him]." *United States v. Saenz,* 969 F.2d 294, 296 (7th Cir. 1992) (internal quotations and citations omitted). The rule provides, in relevant part:

(c) **Advice to Defendant.** Before accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term. . . .

FED.R.CRIM.P. 11. "[T]he test on appeal is whether looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Wagner,* 996 F.2d 906, 912 (7th Cir.1993), *cert. denied,* 510 U.S. 1056, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994) (internal quotations and citations omitted). The Supreme Court has cautioned that, in reviewing Rule 11 proceedings, "[m]atters of reality, and not mere ritual, should be controlling." *McCarthy v. United States,* 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 1171–72 n. 20, 22 L.Ed.2d 418 (1969) (internal quotations and citation omitted). In other words, courts "must strike a balance between a 'crabbed interpretation' that exults form over substance, and an overly technical review which sets 'a procedural trap for the government.' " Saenz, 969 F.2d at 296 (citation omitted).

We find no error here. The plea agreement stated that Richardson faced a maximum penalty of ten years and a $250,000 fine. It provided, alternatively, that if Richardson had the requisite three previous convictions for violent felonies or serious drug offenses, by statute, he would be classified as an armed career criminal and would face imprisonment for not less than fifteen years and a $250,000 fine. Because the probation office had not yet issued its opinion as to whether Richardson qualified as an armed career criminal, the parties provided in the plea agreement that Richardson would be permitted to withdraw his plea if that classification was indeed applicable.

At the change of plea hearing, Richardson's counsel brought to the attention of the court the provision of the plea agreement which allowed Richardson to withdraw his plea. The district court then engaged Rich-

---

**2.** Richardson also claims that the district court failed to explain the meaning or effect of supervised release. Richardson has not expressed any misunderstanding about the meaning or effect of supervised release and provides no basis for concluding that, had he been so advised, he would not have pleaded guilty.

ardson in a colloquy to determine whether he entered his guilty plea knowingly and voluntarily. Richardson indicated to the court that he had had ample opportunity to discuss the case with his attorney and that he was satisfied with his attorney's representation. The court expressly advised Richardson of the possible punishments he could receive. The court explained:

> Ten years in the penitentiary is the max that the Court could impose, with a 250[sic] dollar fine, up to 250[sic] dollars. There would be three years of supervised release, and a 50 dollar special assessment mandate by Congress, I have no discretion on that. Now, if you have three or more violent felony or serious drug offense convictions, then the minimum goes up to 15 years. That's the minimum, the floor would be 15 years. And that could go to life. . . .

The court also advised Richardson that he was entitled to withdraw his guilty plea if the harsher of the two scenarios occurred.[3] Richardson stated that he had read the plea agreement and had discussed its contents with his attorney before he signed it.

*United States v. Wagner*, 996 F.2d 906 (7th Cir.1993), *cert. denied*, 510 U.S. 1056, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994), is instructive in our analysis of this issue. In *Wagner*, the defendants pleaded guilty to conspiracy to distribute cocaine. Pursuant to their agreement with the Government, they did not plead guilty to distributing a specific amount of cocaine. At the plea hearing, the court advised the defendants that, under the Sentencing Guidelines, their respective sentences would depend on the amount of drugs attributed to each of them and that the amounts could not be computed until the sentencing hearing. The court then explained:

> [O]n a charge involving at least five kilograms, there would be a minimum sentence of ten years. If it is less than five kilograms, and your involvement being in the conspiracy with less than five kilograms but more than 500 grams, then the sentence would be a minimum of five years.

*Id.* at 910. On appeal, the defendants claimed that the district court had not properly advised them of the possible sentence for the conspiracy charge, and as a result, the court violated Rule 11(c). We disagreed. · At the time of the plea hearing, the district court had not yet determined the amount of cocaine involved in the conspiracy, and, therefore, it could not have computed with specificity the exact range of sentencing possibilities. Under these circumstances, we concluded that "the district court's disclosure sufficiently informed the defendants of their rights for them to make an intelligent, knowing and voluntary plea." *Id.* at 912.

This reasoning is equally applicable to Richardson's case. At the time of the change of plea hearing, it had not yet been determined whether Richardson qualified for treatment as an armed career criminal. No one could compute with specificity the exact sentencing range that Richardson faced until that determination was made. However, the court accurately and clearly delineated the possibilities and informed Richardson that he was entitled to withdraw his plea if the armed career criminal provision were deemed applicable. In this situation, the district court's disclosure sufficiently informed Richardson of his rights so that he could make an intelligent, knowing and voluntary plea.

■■■■ Even if there were some error in the court's explanation to Richardson of the possible penalties he faced, it was harmless error. Rule 11(h) of the Federal Rules of Criminal Procedure provides that any variance from the procedures required by Rule 11 that does not affect substantial rights shall be considered harmless error. FED. R.CRIM.P. 11(h). The harmlessness inquiry

---

**3.** During the hearing, Richardson expressed some confusion about how his old convictions might affect his guilty plea. At that point, the court explained that Richardson had preserved his ability to withdraw his plea if the armed career criminal provision was found to be applicable. Defense counsel requested a moment to consult with Richardson, after which Richardson stated that he still wished to plead guilty pursuant to the terms of the plea agreement. The transcript from the change of plea hearing makes clear that the court then explained to Richardson the potential penalties he faced under the different sentencing scenarios and that Richardson understood this information.

focuses on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Padilla*, 23 F.3d 1220, 1221 (7th Cir.1994) (citation omitted).

The plea agreement in this case expressly contemplated two different sentencing scenarios. The district court explicitly and clearly advised Richardson of the potential penalties he faced under each scenario, and Richardson indicated that he understood what the potential penalties were. Moreover, Richardson was permitted to withdraw his plea if it were determined that he did indeed qualify for treatment as an armed career criminal. Under these circumstances, it would be illogical to conclude that the district court's explanation of the alternative sentencing possibilities "so undermined [Richardson's] understanding of the consequences of his plea that his substantial rights were affected." *See Saenz*, 969 F.2d at 296.

## CONCLUSION

For the foregoing reasons, the district court's denial of Richardson's motion to suppress evidence and Richardson's sentence are AFFIRMED. We decline Richardson's request to remand the case to the district court on the issue of ineffective assistance of counsel.

RIPPLE, Circuit Judge, concurring.

I am pleased to join in the judgment and opinion of the court insofar as it rests on the ground that the search of Mr. Richardson's car was justified as a search incident arrest under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Indeed, the facts here present a textbook example of a case calling for the application of *Belton*: The defendant was lawfully arrested; the search occurred immediately following the arrest at the scene; and the shaving kit was under the front seat (i.e., in the passenger compartment) and was capable of holding another object (indeed, it held a gun). *Belton* validates the search. *See id.* at 460–62 & n. 4, 101 S.Ct. at 2864–65 & n. 4. It is irrelevant that Mr. Richardson had been arrested before the search occurred; indeed, the defendant in *Belton* had been as well. *See id.* at 456, 101 S.Ct. at 2862. *Belton* establishes a categorical rule for these cases based on a generalized policy rationale, *see id.* at 460, 101 S.Ct. at 2864; therefore, it is wholly immaterial that a suspect has been handcuffed and arrested (and therefore cannot reach a weapon in the car) before his vehicle is searched. *See United States v. Mitchell*, 82 F.3d 146, 152 (7th Cir.), *cert. denied*, ── U.S. ──, 117 S.Ct. 155, 136 L.Ed.2d 100 (1996); *United States v. Willis*, 37 F.3d 313, 317–18 (7th Cir.1994); *United States v. Arango*, 879 F.2d 1501, 1504–07 (7th Cir.1989), *cert. denied*, 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990); *United States v. Karlin*, 852 F.2d 968, 970–72 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Queen*, 847 F.2d 346, 354 (7th Cir. 1988) (citing cases).

I cannot concur with the court's alternate rationale that the search was a valid inventory search. In my view, that rationale does not conform with the holding of the Supreme Court of the United States in *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). *Wells* requires that "standardized criteria . . . or established routine . . . regulate the opening of containers found during inventory searches" because "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id.* at 4, 110 S.Ct. at 1635. Because "the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search[,]" the Supreme Court held that the search in that case was not sufficiently regulated to comport with the Fourth Amendment and that accordingly the evidence found had to be suppressed. *Id.* at 4–5, 110 S.Ct. at 1635–36. There is simply no way to read Illinois' policy (*see ante*, at 1055) to comport with the law as delineated by the Supreme Court. The policy plainly does not set forth any criteria to guide an officer who is deciding whether to open a closed container found during an inventory search.

My colleagues come to the opposite conclusion by relying on *United States v. Wilson*, 938 F.2d 785 (7th Cir.1991), *cert. denied*, 502 U.S. 1062, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992), but that case is irreparably flawed. *See* 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment

§ 7.4(a), at 559 & n. 102 (3d ed.1996) (questioning *Wilson*). In *Wilson* a panel of this court, although recognizing that *Wells* requires a policy regarding the opening of closed containers, 938 F.2d at 788, held that Illinois' policy provided sufficient guidance. The court reasoned that "the term 'contents' [which appears in the policy, *see ante*, at 1055] provides sufficient elucidation to satisfy the requirements of *Wells*." *Id.* at 789. The panel added that, because officers in Illinois are to fill out a report listing the items found in the car; officers in Illinois have received sufficient guidance to satisfy the requirements of *Wells*. In an age when the plain wording approach to interpretation seems to be so *en vogue*, some might think *Wilson's* construction of the word "contents" particularly strained. Suffice it for me to say that *Wilson* is wrongly decided; there is no need to dwell long on the obvious reasons why. In brief, the Supreme Court in *Wells* instructed law enforcement agencies to have a policy regarding closed containers, although it gave the states a great deal of freedom with respect to the nature of that policy. Illinois may want its officers to open every container and, if Illinois wants that rule, current case law permits it to have it. The problem is that Illinois law enforcement authorities have never said that such an approach is the *policy* of the State. It is not enough for states merely to decree, as has Illinois, that items in a car must be listed on an inventory sheet. The states must have a policy with respect to *opening closed containers*. Illinois does not.* It is that simple.

*Wilson* should be overruled. In most situations, a holding of this court interpreting an opinion of the Supreme Court and applying that holding to an identifiable state policy ought to be followed under the doctrines of stare decisis and precedent. Here, however, those doctrines cannot control. The holding

of the court in *Wilson* is so clearly wrong and so clearly nullifies the decision of the Supreme Court in *Wells* that our obligation to follow faithfully the Supreme Court's direction requires that we reevaluate the law of the circuit. Of course, this case does not present the appropriate circumstance to overrule *Wilson* because the search here was permissible under *Belton*. But the majority should not extend the life of a case that is flawed to the core. I accordingly concur in the judgment of the court today, but respectfully decline to condone the departure from Supreme Court precedent that *Wilson* represents.

---

* The majority's citation to Trooper Davidson's testimony clearly demonstrates this fact. *See ante*, at 1055–1056. The trooper said that he would leave locked items locked, but would open unlocked items. Yet that is the *trooper's* policy, not Illinois'. This is precisely what *Wells* addressed: Officers may not set their own ground rules. It is true that the *state's policy* can give some discretion to the officers, *see Wells*, 495 U.S. at 4, 110 S.Ct. at 1635, but it is not permissible, as the majority implies, for the officers to exercise unbridled discretion as the result of there being no

policy whatsoever addressing the opening of closed containers. Indeed, in *United States v. Kordosky*, 909 F.2d 219 (7th Cir.1990), a case remanded by the Supreme Court in light of *Wells*, we remanded the case to the district court because the officer had only testified as to his practice and not to the practice of the police department. Here, Illinois has established neither standardized criteria nor a routine practice "with respect to the opening of closed containers encountered during an inventory search." *Wells*, 495 U.S. at 4–5, 110 S.Ct. at 1635–36.