**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Allen LUMPKIN,**
**Defendant–Appellant.**

No. 96–5627.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1998.

Decided Nov. 6, 1998.

---

Richard Allen Lumpkin, Florence, CO, pro se.

Before: NELSON and NORRIS, Circuit Judges, and HOOD, District Judge.*

HOOD, District Judge.

Richard Allen Lumpkin (Lumpkin) pleaded guilty to two counts of possessing over 500 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) following the denial of his motion to suppress evidence. He was sentenced on April 12, 1996, to 405 months in prison and five years of supervised release. On appeal, Lumpkin challenges the warrantless search of his rental car and borrowed truck and argues that the drugs seized during an inventory search of the truck's engine compartment should be excluded from his sentence calculation. For the reasons that follow, we affirm the district court's judgment.

I

On May 10, 1995, at approximately 12:45 p.m., Special Agent Glen Anderson of the Bureau of Alcohol, Tobacco, and Firearms (ATF) received a call from a confidential informant (CI) who had provided him with reliable information in the past. The CI told Anderson that Lumpkin would be driving westbound on I–440 toward I–65 in a turquoise Mercury Tracer with Tennessee license number 862–BXX and in possession of one or two pounds of methamphetamine; the CI described Lumpkin and stated that he would be traveling with a white female passenger. At approximately 1:00 p.m., the same day, Anderson relayed this information to Officer Troy Gene Donegan of the Metropolitan (Nashville) Police Department's Narcotics Section. Donegan contacted several other officers for assistance and began to drive in a direction calculated to intercept Lumpkin's vehicle. Shortly thereafter, Donegan observed the turquoise Mercury Tracer traveling west on I–440 toward I–65 with the license plate and occupants as described by the CI. He asked officer Lynn

Wendy H. Goggin, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Attorney, Nashville, TN, for Plaintiff–Appellee.

Gregory Dale Smith (argued and briefed), Clarksville, TN, for Defendant–Appellant.

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Hampton, driving a marked police car, to stop the Mercury on a pretense that the vehicle fit the description of one that had driven off from a gasoline pump without paying. Donegan turned around at the next exit and arrived at the scene approximately six minutes after giving these instructions; by this time Lumpkin was in the back of a police car and the female occupant, Dusty Thompson (the spelling of her name varies throughout the record), was standing outside.

Metropolitan police officer Al Burrow, also present at the scene, asked Thompson whether she had any drugs or firearms in the car, and she replied that she had a pistol in her purse. Burrow recovered the purse from the passenger front floorboard and removed a loaded .38 caliber Derringer. Thompson was advised of her rights by Donegan while Lumpkin was advised of his rights by another officer present. Based upon the information from the CI and its corroboration, the loaded weapon, a slight conflict in Lumpkin's and Thompson's stories about where they were going and where they had been, and Lumpkin's statement that there was approximately $20,000 cash in the car trunk, officer Gene Donegan determined that probable cause existed to search the Mercury. The currency was recovered from the trunk, and after a search of the interior of the passenger compartment yielded nothing else, Donegan raised the hood of the vehicle. Lying against the car battery was a cylindrical roll wrapped with brown tape and containing a white powder; Donegan testified that the powder had a slight odor of what he believed to be methamphetamine. At this point, both individuals were placed under arrest for possession of a controlled substance for resale. The substance was later analyzed by the Tennessee Bureau of Investigation and was confirmed to be methamphetamine.

While still at the scene of the initial stop, Thompson told officers that she and Defendant had driven to Tennessee from Oklahoma and that she didn't understand why they had rented a car in Nashville when the red and white pickup truck they had arrived in was parked at the Opryland Complex. The keys to this truck were promptly recovered from Thompson's purse (there is some disagreement as to whether she told officers they were there), and officers Donegan and Burrow went to the Opryland Complex to seize the truck, believing it to have been used in a drug transaction. Although it was not clear from the record on appeal, both parties recalled at oral argument that the truck was first transported to the police impound lot, where its contents were inventoried. Another tape-wrapped cylinder containing approximately one pound of methamphetamine was found in the engine compartment of the truck.

Lumpkin was indicted on the two counts described above on July 13, 1995. He subsequently submitted a motion to suppress the evidence obtained from the car and truck as violating the Fourth Amendment prohibition against unreasonable searches and seizures. Following a two-day hearing, the district court denied Lumpkin's motion to suppress. On October 25, 1995, Lumpkin entered a guilty plea, while reserving the right to appeal his suppression issues.

Special Agent Noble of the Federal Bureau of Investigation testified at Lumpkin's sentencing hearing that Lumpkin had described the structure of the organization with which he dealt and whose purpose was to distribute crystal methamphetamine. An individual named Pennington was at the top of the Tennessee side of the organizational chart. Pennington had traveled to California to obtain methamphetamine from Lumpkin, usually five pounds, but sometimes two or three pounds, once or twice a month over the eight months preceding Lumpkin's arrest. Lumpkin had recently been asked by Pennington, who was then in prison in California, to travel to his residence in Kentucky and pick up six pounds of methamphetamine he had hidden there. Both packages of drugs seized on May 10, 1995, came from this six pounds. The money in the Mercury's trunk had come from an earlier sale of two pounds of methamphetamine to one of Pennington's customers, and the remaining two pounds had been fronted to another customer. In his objections to the presentence investigation report (PSI), Lumpkin claimed that the agents had misunderstood him and that he

was referring to another individual when he described the eight-month relationship with Pennington. Nonetheless, the district court credited the facts as presented in the PSI and the agent's hearing testimony and held Lumpkin accountable for 18.14 kilograms (40 pounds, or five pounds per month over eight months) in addition to the 1.06 kilograms seized on May 10, 1995, for a total of 19.2 kilograms of methamphetamine. This drug quantity called for a base offense level of 36 which, when combined with Lumpkin's criminal history category of VI, resulted in a guidelines sentencing range of 324 to 405 months. The district court's judgment was entered on April 24, 1996, and Lumpkin timely appealed.

II

■ Lumpkin first argues that the district court erred in denying his motion to suppress the warrantless search of his rental car. When reviewing the denial of a motion to suppress evidence, this court applies a clearly erroneous standard to the district court's findings of fact and reviews its conclusions of law *de novo*. *United States v. Bradshaw*, 102 F.3d 204, 209 (6th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 1453, 137 L.Ed.2d 558 (1997). We conclude that the district court properly denied the motion to suppress.

■ Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime. *United States v. Ross*, 456 U.S. 798, 799, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998) (citing *California v. Carney*, 471 U.S. 386, 390–94, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)). "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Smith*, 136 F.3d at 1074 (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.), *cert. denied*, 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994)). Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated

by the independent investigation of law enforcement officers. *See Chambers v. Maroney*, 399 U.S. 42, 44, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (finding probable cause for warrantless search of a vehicle that matched description given by eyewitness to a robbery); *United States v. Padro*, 52 F.3d 120, 123–24 (6th Cir.1995) (upholding a warrantless search of vehicle where officer had probable cause to believe car contained cocaine based upon an informant's tip and officer's corroboration); *United States v. Brown*, 49 F.3d 1346, 1350 (8th Cir.1995) (upholding a warrantless search of vehicle when truck matched description given by informant and it arrived at location specified for drug transaction).

■ In this case, the CI's tip was corroborated by the officers' own observations, thus providing probable cause for the search of the automobile. Nonetheless, Lumpkin argues that this information should have been used to obtain a search warrant, claiming that the extensive planning described at the suppression hearing afforded officers plenty of time to apply to a magistrate for a warrant. The testimony presented at the suppression hearing refutes this claim. The informant's tip came in to the ATF agent at 12:45 p.m. on May 10, 1995. Anderson relayed this information to local police officers at 1:00 p.m., and the Mercury was stopped by police sometime between 1:30 and 2:00 p.m. Time was clearly of the essence; the Mercury was enroute to I–65 and there was, contrary to Lumpkin's assertion, little time to find a magistrate and obtain a search warrant. The district court specifically found that there was no time to obtain a warrant, and this finding is not clearly erroneous.

Furthermore, the search under the car's hood was proper. The Fifth Circuit had occasion to consider the scope of a probable cause search of a car stopped for speeding. As officers approached the car, they detected the odor of burnt marijuana and observed a box of ammunition in the back seat. The court concluded that "[u]nder the totality of the circumstances, Officers ... had probable cause to believe that the car contained evidence of illegal drug trafficking, and thus had

the right to search all of the car, *including the locked trunk and engine compartment....* Thus, we are forced to conclude that the district court erred as a matter of law in concluding that a warrant, in addition to probable cause, was necessary to enable Officers ... to search the engine compartment." *United States v. Kelly,* 961 F.2d 524, 527–28 (5th Cir.1992) (emphasis added). We concur with the Fifth Circuit's analysis and conclude that, under the totality of the circumstances of this case, officers had probable cause to search the engine compartment of Lumpkin's rental car.

### III

Lumpkin also challenges the warrantless search of the pickup truck, asserting that there was no evidence to link it to illegal activity and that, in any event, the search of the engine compartment exceeded the scope of a valid inventory search. Whether the scope of an inventory search includes the engine compartment of a vehicle is an issue of first impression in this circuit.

■ The district court first found that Thompson's statement regarding the pick-up truck and the presence of methamphetamine in the rental car provided a sufficient basis to seize the truck following Lumpkin's arrest. Again, the district court's finding is not clearly erroneous. From Thompson's story, officers knew that she and Lumpkin had driven to Tennessee from Oklahoma in that truck, but then left it parked at the Opryland Complex and, instead, rented another vehicle. Since Lumpkin was found to be in possession of drugs, it was reasonable to suspect the truck of involvement in the criminal activity and to seize it.

■ After lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search. Such inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Protection of the property was of particular importance in this case because the officers

were told that the truck belonged to a friend of Lumpkin's who lived in Oklahoma. An inventory search may not be conducted for purposes of investigation and must be conducted according to standard police procedures. *See Florida v. Wells,* 495 U.S. 1, 5, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). However, the fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search. *See United States v. Harvey,* 16 F.3d 109, 112 (6th Cir.), *cert. denied,* 513 U.S. 900, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994); *United States v. Lewis,* 3 F.3d 252, 254 (8th Cir. 1993) (per curiam) (noting that "[t]he presence of an investigative motive ... does not invalidate an otherwise valid inventory search"), *cert. denied,* 511 U.S. 1111, 114 S.Ct. 2111, 128 L.Ed.2d 671 (1994). Therefore, the fact that Donegan and Burrow may have suspected that the truck contained evidence of drug trafficking does not render their inventory search invalid if otherwise found to be lawful.

■ Lumpkin principally objects to the scope of the search and argues that the search of the truck's engine compartment exceeded the scope of a valid inventory search. Officer Burrow, who conducted the search, testified that in every inventory search of a vehicle which he had performed, he raised the hood of the vehicle to check for missing parts, and that a complete inventory of a vehicle's contents was standard procedure for the Metropolitan Police Department. "Generally, 'reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment.'" *United States v. Richardson,* 121 F.3d 1051, 1055 (7th Cir.1997) (quoting *Bertine,* 479 U.S. at 374, 107 S.Ct. 738). Illinois's policy for inventory searches, quoted in part by the Seventh Circuit in *Richardson,* provides that the examination and inventory of the contents of all vehicles or boats held by department authority "would normally include front and rear seat areas, glove compartment, map case, sun visors, and trunk *and engine compartments." Id.* at 1055 (emphasis added). No such written inventory policy for the Metropolitan Police Department is found in the record of this case, but

the undisputed testimony of Officer Burrow is sufficient to establish that the search of the pick-up truck was conducted in good faith according to standard operating procedure.

Although this circuit has not previously dealt directly with the question of an inventory search under the hood of a vehicle, other circuits have. The Eighth Circuit, when faced with this issue, rejected the defendant's contention that police officers "went beyond the scope of a permissible inventory search when they searched the van's engine compartment. Because Lewis had a bag of cocaine in his shirt pocket when he was arrested, the officers had ample justification to search all areas of the van where personal property might be found, to protect the public from persons who might find contraband drugs in the van." *Lewis,* 3 F.3d at 254. In that case, officers had searched the van in question six hours after the defendant's arrest and discovered a box containing an amount of heroin valued at $125,000 hidden in the engine compartment. *See id.*

The Tenth Circuit has taken a similar position on the scope of an inventory search. The inventory then under scrutiny was found to be "entirely consistent with the purposes of an inventory search, showing inter alia: *engine, battery, radiator, generator,* bumpers, stereo, seats...." *Smyth v. City of Lakewood,* No. 95–1481, 1996 WL 194715, at *5 (10th Cir.1996) (emphasis added).

We agree with the position taken by the Eighth and Tenth Circuits and, therefore, hold that a valid inventory search conducted by law enforcement officers according to standard procedure may include the engine compartment of a vehicle. Accordingly, the district court did not err in denying the motion to suppress evidence obtained from the warrantless search of the pickup truck.

### IV

Lumpkin's next issue on appeal—that his sentence was erroneously calculated using the amount of methamphetamine found in the truck—is entirely dependent upon our decision on the suppression issue. For the reasons already discussed in relation to the inventory search of the truck, we find that this issue is without merit. Furthermore, we note that Lumpkin does *not* challenge in this appeal the inclusion of the 40 pounds of methamphetamine he supplied to Pennington over the eight-month period prior to his arrest. Deleting the 500+ grams recovered from the truck would still leave Lumpkin responsible for over 18 kg of methamphetamine. As offense level 36 is applied in cases involving at least 10 kg but less than 30 kg of methamphetamine, there would be no change in Lumpkin's total offense level or in his sentencing range in the event the methamphetamine found in the truck was excluded.

### V

■ We need spend little time on Lumpkin's final argument that we should review for plain error the additional issues presented in his pro se brief under the procedure for appellate review set forth in *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). That procedure was specifically tailored and prescribed for use within the military justice system. *See id.* at 433, 435–36. It has no application in this court, and the procedure has never been adopted by a non-military court.

In any event, by an order filed on August 28, 1997, and entered pursuant to Rule 8(b), Rules of the Sixth Circuit, those portions of Lumpkin's pro se brief that raised issues other than those identified by counsel have already been stricken. Lumpkin's subsequent motion to file a pro se supplemental brief or, in the alternative, seeking an order to direct appointed counsel to file a supplemental brief addressing additional issues, was denied on November 21, 1997. Reconsideration of that order was denied by this court on February 6, 1998. We summarily reject this fourth attempt by Lumpkin to get additional issues before the court.

### VI

For the foregoing reasons, the judgment of the district court, entered on April 24, 1996, is **AFFIRMED**.