

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-2004

# USA v. Sinkler

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1912

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Sinkler" (2004). *2004 Decisions*. Paper 931.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/931

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1912

UNITED STATES OF AMERICA

v.

FREDDIE SINKLER, JR.,
Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 01-cr-00071)
District Judge:  Honorable Yvette Kane

Argued February 23, 2004
Before:  RENDELL, BARRY and ROSENN, Circuit Judges.

(Filed March 17, 2004)

Sanford A. Krevsky, Esq.    [ARGUED]
KREVSKY & ROSEN
1101 North Front Street
Harrisburg, PA  17102
  *Counsel for Appellant*

Christy H. Fawcett, Esq.    [ARGUED]
OFFICE OF THE U.S. ATTORNEY
Federal Building
228 Walnut Street
P.O. Box  11754
Harrisburg, PA  17108
  *Counsel for Appellee*

RENDELL, Circuit Judge.

After engaging in a high-speed chase with Harrisburg police officers on January 7, 2001, Freddie Sinkler, Jr., was arrested and charged with possession with intent to distribute cocaine. The cocaine was discovered, along with marijuana, cash, and drug paraphernalia, in a backpack near the location where Sinkler's car had flipped over, ending his flight from the authorities. The United States District Court for the Middle District of Pennsylvania denied a motion to suppress the contents of the backpack, and Sinkler subsequently entered a guilty plea to the drug charge pursuant to an agreement that preserved his right to appeal the suppression ruling. He was finally sentenced on February 19, 2003, to 212 months in prison, followed by 5 years of supervised release.

Sinkler now appeals, challenging only the denial of his motion to suppress the narcotics. Because we are unable to discern the factual underpinnings of several of the District Court's conclusions, and because we cannot resolve the questions presented here ourselves on the record as it stands before us, we will vacate the District Court's order and remand to the District Court for further proceedings regarding the issues we explore below.[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## I. BACKGROUND

Sinkler initiated the high-speed chase at approximately 2 a.m. on January 7, 2001, when officers patrolling Harrisburg approached him in their car. At the time, Sinkler was driving a green Jeep Grand Cherokee with a ski rack on top, which matched the description of a car thought to be driven by Clifford Bradley, a suspected felon who had a history of fleeing from the police. Officers followed Sinkler's Jeep and soon learned, based on the registration number, that the car was registered to Sinkler.[2] One officer, who later testified at the suppression hearing in this case, stated that he had personal knowledge of Sinkler from a prior encounter with him, and was aware that Sinkler's driver's license had been suspended. To ascertain who was driving the Jeep, the officers pulled up on its passenger side, but could only discern that the driver was an African-American man who was alone and speaking on a cell phone.

The basic description of the car and its driver matched that of Bradley, so the officers attempted to initiate a stop. When they turned on their lights, the Jeep sped away. An extended high-speed chase ensued, involving multiple patrol cars and covering a significant distance. The officers testified that during the chase, the driver of the Jeep made several attempts to swerve into the police cars that were pursuing him. The chase

---

[2]As the District Court noted, apparently the car was actually registered to Sinkler's father, who shares the same name and address as Sinkler.

3

ended when Sinkler lost control of the Jeep on I-81 North, where the vehicle collided with a police van, went into a spin, and came to rest turned over onto its driver's side. As it spun and turned over, the officers saw objects flying from the Jeep and landing on the highway median.

Sinkler was arrested immediately. Contemporaneously with the arrest, officers on the scene seized and searched a backpack that was found approximately fifteen feet from the car, resting in smooth, undisturbed snow. The officers discovered cocaine, marijuana, cash, and drug paraphernalia inside the backpack. Sinkler was subsequently charged with possession with intent to distribute cocaine. He sought to have the contents of the backpack suppressed on the grounds that he was illegally stopped prior to the chase, rendering his arrest unlawful and the contents of the backpack "fruits of a poisonous tree" under Wong Sun v. United States, 371 U.S. 471 (1963). He also asserted in passing that no physical evidence linked him to the backpack.

The District Court denied his motion in a memorandum and order filed on July 27, 2001. The Court concluded that the officers had reasonable suspicion that the suspected felon might be driving Sinkler's car, based on the information available to them at the time they first approached the car, and they were authorized to conduct an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968). Further, the Court concluded that even if reasonable suspicion had been absent, there was no Fourth Amendment violation when the officers approached Sinkler, due to the fact that he fled and did not submit to their

4

authority. In other words, based on <u>California v. Hodari D.</u>, 499 U.S. 621 (1991), no seizure of Sinkler actually occurred until the conclusion of the chase. The Court next stated, in conclusory fashion and with no stated evidentiary basis, that the seizure of the backpack was valid because Sinkler had "abandoned" it. And finally, the Court concluded that, even absent abandonment, the officers were justified in seizing the backpack as part of a search incident to the lawful arrest of Sinkler, as the backpack was found in "the areas adjacent to [Sinkler's] arrest."

## II. DISCUSSION

Based on the District Court's opinion and the parties' arguments on appeal, we have identified four separate arguments or issues before us for consideration: 1) was Sinkler illegally stopped or seized before or during the chase, rendering the backpack's contents fruits of a poisonous tree?; 2) did Sinkler abandon the backpack?; 3) could the backpack be legally searched incident to Sinkler's arrest?; and 4) could the search of the backpack be deemed part of a valid inventory search?[3] Our standard of review on each of

---

[3]At oral argument, Sinkler's counsel renewed an argument made at the District Court level, namely, that there was insufficient proof that the backpack in fact belonged to Sinkler. However, this issue was not pressed in Sinkler's brief, and we think it is actually not properly before us on appeal of the issues related to the suppression determination. After losing the suppression motion, Sinkler pled guilty but reserved the right to argue on appeal that the evidence should have been suppressed. The argument regarding ownership of the backpack is not really one that impacts suppression – although ownership of an item can become an issue if the government argues that the defendant lacks standing to bring a Fourth Amendment challenge – but, as made here by Sinkler, it

these issues requires us to look at the District Court's conclusions of law de novo, and to review its findings of fact for clear error. United States v. Coggins, 986 F.2d 651, 654 (3d Cir. 1993). On appeal, Sinkler reiterates his initial challenges, while the government contends that the District Court properly held that the search was valid based on abandonment, incident to arrest, and as an inventory search.[4] We will discuss each of the four issues in turn.

## A. The Stop and Seizure of Sinkler

We dispose of the first issue relatively easily. Sinkler points to two relevant moments in time when he contends an illegal stop or seizure of him occurred: the initial approach of the police car prior to the chase, which he characterizes as a stop, and the instant when his car struck a police van to end the chase, which he characterizes as a seizure. It is well-established that police officers may conduct warrantless stops of suspects where they have reasonable suspicion, based on specific articulable facts, that "criminal activity may be afoot." Terry, 392 U.S. at 30. A Terry stop is likewise appropriate where officers have reasonable suspicion to believe that a person they

---

is an argument as to sufficiency of the evidence of guilt. As such, it would appear to be subsumed within his guilty plea, and not really a suppression issue at all. In any event, we do not consider this issue of ownership to be properly presented for our review.

[4]After oral argument, it is unclear whether the Government has "abandoned" the abandonment argument, which is barely mentioned in its brief, or whether it will continue to pursue this issue on remand. We also note that the Government only referred to the possibility of invoking the inventory search issue in a short footnote near the end of its brief. However, the District Court will be free to address these issues if the parties choose to explore them on remand.

encounter was involved in a completed felony. United States v. Hensley, 469 U.S. 221, 229 (1985). It is also clearly established that a suspect is only seized, for Fourth Amendment purposes, where there has been an application of physical force, or a show of authority to which the suspect submits.[5] Hodari D., 499 U.S. at 626.

Regarding the initial unsuccessful attempt by the officers to conduct an investigatory stop, we find this case to be squarely governed by Hodari D. There, the suspect fled upon noticing an unmarked police car approaching his group of companions on the street, prior to any stop or contact by the police. Id. at 622-23. The Supreme Court determined that he was neither stopped nor seized when the officers approached and pursued him, but rather was only actually seized when he was tackled by an officer to end the chase. Id. at 629. The officers here approached the Jeep and flashed their lights, intending to conduct a Terry stop. No stop occurred, as Sinkler immediately sped away. Rather than submitting to their show of authority, Sinkler fled, just like the suspect in Hodari D. In fact, Sinkler admits in his brief that "he did not submit to authority at the stop light." Thus, we agree with the District Court that no illegal stop or seizure of Sinkler occurred prior to the chase.[6]

---

[5]Once such physical force or show of authority is found, the inquiry then turns to whether a reasonable person in the suspect's position would feel free to leave; if not, then a seizure has occurred. United States v. Mendenhall, 446 U.S. 544, 554 (1980). This second stage of the seizure inquiry is not relevant to our analysis of this case.

[6]Before discussing Hodari D. and finding that Sinkler did not initially submit to the officers' show of authority, the District Court determined that the officers had reasonable suspicion to stop Sinkler prior to the chase. Because we conclude that no stop or seizure

7

As to the collision that ended the chase, Sinkler contends that he was stopped and seized by the application of physical force when his Jeep struck the police van. He points to language from Hodari D. and Brower v. County of Inyo, 489 U.S. 593 (1989), to support his contention that the collision constituted a seizure for Fourth Amendment purposes. In both of those cases, the Supreme Court discussed what types of police behavior result in a seizure of the suspect. In Brower, the Court held that a seizure occurred where police officers placed a tractor-trailer across a highway in order to stop a fleeing suspect by causing him to crash into it. 489 U.S. at 598-99. Then in Hodari D., the Court noted that the "laying on of hands or application of physical force to restrain movement" is readily classified as a seizure. 499 U.S. at 626. Relying on these cases, Sinkler contends that the police, using a van involved in the pursuit, applied force and effectively seized Sinkler illegally at the conclusion of the chase.

However, Sinkler's argument related to the collision fails for two reasons. First, the District Court made a finding that the police van accidentally struck the Jeep when Sinkler lost control after making a u-turn. Given the testimony of the officers at the suppression hearing supporting this determination, such a finding is not clearly erroneous. In light of the finding that the collision was unintentional, this case is distinguished from Brower, where the Court emphasized that a seizure "requires an intentional acquisition of

_____

occurred when the officers first approached Sinkler in his Jeep, we need not decide whether the facts here gave rise to reasonable suspicion justifying a stop at that time.

8

physical control." 489 U.S. at 595-96 (emphasis added). A roadblock constructed with the express purpose of causing a suspect to collide with it presents a very different situation from an accidental crash where the suspect suddenly loses control of his vehicle. See id. (addressing and distinguishing accidental collisions when parties to a chase lose control of their vehicles). Since we will uphold the District Court's finding that the collision here was accidental, we cannot find a seizure based upon Brower as Sinkler urges.

The second fatal flaw in Sinkler's argument related to the conclusion of the chase is the fact that by the time of the crash, even if a seizure had occurred when the cars collided, the police officers quite clearly had probable cause to arrest Sinkler for a multitude of traffic violations, as well as assault of a police officer, based on his actions during the chase itself. Further, "unprovoked flight upon noticing the police" is a factor that is also significant in determining whether reasonable suspicion or probable cause exist in a situation encountered by the police. Cf. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (describing "headlong flight" as "the consummate act of evasion," and something that is reasonably suggestive of wrongdoing, in a case involving a Terry stop). Thus, when Sinkler was ultimately seized and arrested following the chase, that seizure was justified based on his flight coupled with the observations of the police officers during their pursuit of him. We therefore conclude that the District Court was correct in holding that Sinkler was not subjected to any illegal stop or seizure before, during, or after the

9

chase. The issues that remain involve alternative methods of attacking the subsequent search of the backpack found near Sinkler's Jeep.


### B. Abandonment

Despite the fact that neither party raised the issue of abandonment below, the District Court, sua sponte, concluded that Sinkler abandoned the backpack, and that it was therefore properly seized by the police after the chase. The District Court reached this conclusion after discussing <u>Hodari D.</u>, where a police officer saw the defendant toss away a rock of crack cocaine while the officer was chasing him. 499 U.S. at 623. However, the District Court's memorandum provides no discussion of the reasoning leading the Court to the conclusion that the backpack was abandoned in this case. Abandonment requires some type of a showing that the defendant <u>intended</u> to relinquish possession and control of the object in question. <u>See</u> Black's Law Dictionary 2 (6th ed. 1990) (defining "abandoned property" as "property over which the owner has given up dominion and control with no intention of recovering it"); <u>cf.</u> <u>Abel v. United States</u>, 362 U.S. 217, 240-41 (1960) (finding that a suspect had abandoned items that he left behind in a hotel trash can when he checked out of his room). Here, there is no evidence as to how the backpack came to leave the car – whether by being tossed out or by being ejected by the force of the crash. Additionally, the Government, by implication in its brief and by admission at oral

10

argument, may well have abandoned its argument that Sinkler abandoned the backpack.[7]

The record here does not appear to include evidence from which we could conclude that Sinkler intended to abandon the backpack, and that it did not simply fly from the car during the crash.[8] Because the parties did not raise or explore this issue at the suppression hearing, we find it necessary to remand so that the Court can give further

---

[7]In response to questions from the Court at oral argument, the Government was unable to point to any direct or circumstantial evidence showing that Sinkler threw the backpack out of the Jeep or intended to abandon it. Although counsel for the Government stopped short of admitting that she was "abandoning" the abandonment argument altogether, she admitted that her primary focus was on the search incident to arrest and inventory search issues.

[8]The District Court analogized this case to Hodari D. and concluded that Sinkler, like Hodari, had abandoned the contraband at the end of the chase. However, the reason for this conclusion is not obvious to us. It is true that police may search an item that has been abandoned by a suspect, as the suspect retains no reasonable expectation of privacy in something that he abandons. See Hodari D., 499 U.S. at 629 (upholding the seizure of drugs that were tossed away by a defendant while he ran from police); Abel v. United States, 362 U.S. 217, 240-41 (1960) (upholding the seizure of abandoned items that were left by the defendant in a hotel trash can after the defendant had checked out of the hotel); Hester v. United States, 265 U.S. 57, 58 (1924) (upholding the seizure of items that were abandoned by defendants who were fleeing from officers who were pursuing defendants without a warrant).
      However, these cases all rest on the implication that some finding of intent on the part of the defendant to abandon the property is required before a court may conclude that the defendant has sacrificed his expectation of privacy with respect to the property involved. Not everything that is situated beyond the defendant's person and the area that he occupies or owns is automatically deemed "abandoned" for Fourth Amendment purposes. Here, if Sinkler in fact threw the backpack out of the Jeep's window during or after the collision, this case would become identical to Hodari D. and the seizure of the backpack could be upheld under the abandonment doctrine. But if the Government cannot prove directly or circumstantially that Sinkler intended to toss the backpack away, it seems just as likely that the impact of the collision caused the backpack to fly from the Jeep. If that is the case, it would be troubling to find that Sinkler somehow "abandoned" it and gave up his Fourth Amendment rights with respect to its contents.

11

consideration to this point.

## C.  Search Incident to Arrest

The District Court also concluded that the backpack was properly seized during a valid search incident to Sinkler's arrest, although the Government did not actually invoke this exception to the warrant requirement and Sinkler did not have an opportunity to respond to it below.  Again, the District Court reached this conclusion in summary fashion, without discussing the law related to searches incident to arrest or how the facts supported a finding that the search of the backpack could be justified on this basis.

Our review of the record does not convince us that the Court could conclude that the search of the backpack was proper because it was incident to Sinkler's arrest.  There was no testimony indicating that Sinkler was removed from the car and arrested within reach of the backpack, which would provide the legal justification for permitting a search on this basis.[9]  Again, because the parties did not raise or explore this issue before the

---

[9]The District Court simply concluded that, because Sinkler's arrest was lawful, the police could properly seize the backpack during a search of "the areas adjacent to his arrest."  However, we think the issue of whether the backpack would properly be the subject of a search incident to Sinkler's arrest is substantially more complicated than that.  We base this view on an examination of the case law related to searches incident to arrest, none of which the District Court referenced in its memorandum.  The Supreme Court has confronted the issue of the proper scope of a search incident to an arrest on several occasions.  For purposes of this case, it is relevant to note that, in connection with a lawful arrest, the police are justified in searching "the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  Chimel v. California, 395 U.S. 752, 763 (1969) (striking down a search of portions of a house beyond the "area into which an arrestee might reach in order to grab a weapon or

District Court, and because the conclusion reached by the District Court is not clearly

proper on this record, we are compelled to remand so that the record, and the parties'

arguments, can be developed more fully on this point as well.

## D. Inventory Search

Presumably in response to the District Court's resort to the doctrines of

abandonment and search incident to arrest, the Government added a mere footnote in its

---

evidentiary items"). As we have stated in the past, such a search is subject to geographic and temporal limitations. United States v. Myers, 308 F.3d 251, 266-67 (3d Cir. 2002) (examining this doctrine and its development, and noting that we should not assume that the defendant was "an acrobat" or "a Houdini").

Where, as here, a defendant is arrested in his vehicle, the Court has made clear that a contemporaneous search incident to his arrest may include the entire passenger compartment of the car, as well as "the contents of any containers found within the passenger compartment." New York v. Belton, 453 U.S. 454, 460 (1981). However, these "car" cases are not automatically controlling here. We are unaware of any cases binding on us that extend the scope of a search incident to the arrest of a defendant in his vehicle to include items found beyond the passenger compartment of that vehicle. The Government relies on a Seventh Circuit case, United States v. Richardson, 121 F.3d 1051 (7th Cir. 1997), to support a search of the backpack based on the fact that it was likely within Sinkler's reach just prior to his arrest, but we find that case to be distinguishable. In Richardson, the seizure occurred upon an inventory search of the vehicle's contents, on the scene and contemporaneously with the defendant's arrest. Id. at 1053-54. Additionally, the container at issue there was discovered in the passenger compartment of the vehicle, id. at 1053, a location that is clearly within the scope described by the Supreme Court in Belton.

Finally, we have binding precedent in our own circuit that appears to squarely reject the Government's theory that the search should include items to which Sinkler may have had access prior to his arrest. See Myers, 308 F.3d at 253, 267 (striking down the search of a bag that officers observed in the defendant's hand just prior to his arrest, but that he dropped a few feet away from the spot where he was ultimately handcuffed, where the defendant was immediately pinned to the ground with his arms behind his back and the officers waited a short time before searching the bag).

13

brief on appeal noting that the seizure of the bag was also part of a valid inventory search. Counsel for the Government pursued this issue at oral argument as well. But, again, the issue was not referenced by the parties or the District Court, the Government does not expand on it here, and Sinkler has not responded to it. Further, the record contains no evidence related to the Harrisburg Police Department's policy regarding inventory searches, and the police officers who testified at the suppression hearing did not characterize the search of the backpack as part of an inventory search.[10]

As the record is not developed at all on this issue, the parties should be given an opportunity to explore whether the backpack was (or would have been) found through an

---

[10]It is unclear whether the Government takes the position that the police were actually performing an inventory search of the Jeep's contents at the time the backpack was seized, or that the backpack would have inevitably been taken in and searched when the Jeep was impounded and its inventory was catalogued. It is well-established that police departments can conduct inventory searches of vehicles that they impound, and that such searches can involve the opening of containers found inside the vehicle. Florida v. Wells, 495 U.S. 1, 3-4 (1990). While the backpack here, if it is somehow properly linked to the Jeep or to Sinkler, may have been seized as part of an inventory search, we cannot determine whether such a search would have inevitably led to the discovery of the backpack's contents. See Nix v. Williams, 467 U.S. 431 (1984) (discussing the doctrine of inevitable discovery); United States v. Vasquez de Reyes, 149 F.3d 192 (3d Cir. 1998) (same). None of the testimony from the suppression hearing indicates that the officers were conducting an inventory search on the scene. Additionally, none of the officers testified as to whether and how the Harrisburg Police Department conducts inventory searches. On remand, the burden of proving by a preponderance of the evidence that the backpack would have inevitably been the subject of an inventory search will rest with the Government. Vasquez de Reyes, 149 F.3d at 195. The Government, of course, will also bear the burden of proving all relevant exceptions to the warrant requirement and any other grounds for a permissible search that may apply here, including the abandonment of the backpack, as well as its status with respect to the scope of a search incident to Sinkler's arrest.

inventory search conducted pursuant to this police department's routine procedures.

## III. CONCLUSION

While we conclude that Sinkler was not illegally stopped or seized, and that probable cause existed to arrest him following the chase, we are left with several unresolvable arguments as to why the search of the backpack may have been permissible without a warrant.[11] Upon examining the District Court's memorandum and the record submitted to us on appeal, we remain unable to discern the basis for conclusions the District Court reached involving Sinkler's "abandonment" of the backpack, and the search incident to Sinkler's arrest. If neither of these arguments prevails, the Government's contention that it was a valid inventory search will need to be developed. Accordingly, we will VACATE the order of the District Court denying Sinkler's motion to suppress evidence, and we will REMAND to the District Court for further proceedings consistent with this opinion.

---

[11]As we conclude, we note that we are troubled by the cursory manner in which the District Court treated many of these issues, perhaps misguided by the failure of counsel for both parties to recognize and explore with precision several of the key issues below. In a case where the defendant is facing nearly eighteen years in prison, as in any other criminal case, care must be taken that the reasoning and conclusions are sufficiently thorough and well-crafted.